**A.I. CREDIT CORP., Plaintiff,**

v.

**The GOVERNMENT OF JAMAICA, Defendant.**

**No. 87 CIV 3442 (LBS).**

United States District Court, S.D. New York.

Aug. 20, 1987.

Cahill Gordon & Reindel, Attorneys, New York City, David R. Hyde, George Wailand, Michael S. McSherry, of counsel, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton, New York City, George Weisz, Nancy E. Schwarzkopf, of counsel, for defendant.

## OPINION

SAND, District Judge.

As a result of a depressed national economy, the Government of Jamaica ("Jamaica") ceased paying principal on its foreign bank debt in mid–1983. This moratorium followed three reschedulings of the debt in 1978, 1979, and 1981, which were accomplished with the consent of Jamaica's affected creditors, including foreign banks and financial institutions. Jamaica entered into a fourth rescheduling agreement on June 27, 1984 (the "1984 Agreement"). This agreement encompassed not only debt previously rescheduled, but also newly incurred debt owed to Continental Illinois Bank and Trust Company ("Continental Illinois"). This agreement affected the debts owed to a total of 113 banks and institutions ("the banks").

In August 1984, in accordance with the 1984 Agreement, Continental Illinois assigned 90 percent of its rescheduled debt as well as all rights and obligations relating thereto, to plaintiff in this action, A.I. Credit Corporation ("AICCO"). The assignment, consisting of approximately $10,000,-000 in debt before interest, was accomplished pursuant to a Transfer Agreement executed between Continental Illinois and AICCO. In the Transfer Agreement, and in compliance with section 12.09 of the 1984 Agreement, AICCO agreed to be treated as a "Bank" for all purposes of the 1984 Agreement "subject to the terms and conditions of the [1984] Rescheduling Agreement ... as the same hereafter from time to time may be amended, modified or supplemented...." Transfer Agreement, at 4.

The 1984 Agreement provided that Jamaica's debt would become payable in 17 quarterly payments, commencing on March 15, 1986. However, it became apparent in early 1985, if not sooner, that although it was making interest payments, Jamaica would be unable to repay principal on the schedule set forth in the 1984 Agreement. Jamaica and the banks thus entered into a fifth rescheduling agreement during that year ("the 1985 Agreement"), and yet a sixth such agreement on April 30, 1987 ("the 1987 Agreement"). The 1987 Agreement specifies that Jamaica is to make quarterly payments commencing on October 15, 1988.

Each bank that was a party to the 1984 Agreement voluntarily entered into these subsequent 1985 and 1987 agreements, with the exception of AICCO and two other banks in 1985, and AICCO and one other bank in 1987. Standing on what it claims are still its rights under the 1984 Agreement, AICCO alleges that to date, Jamaica has defaulted on six scheduled installments of principal. On this account, plaintiff asks this Court to grant it summary judgment.

The crux of this motion for summary judgment rests on the extent and nature of the relationship established between these banks pursuant to the 1984 Agreement, and the resulting standing of plaintiff to sue individually to enforce its rights under the agreement. We note at the outset that no bank other than AICCO has attempted to enforce the 1984 Agreement, and that no other bank has sought to intervene on either side of this litigation.

There is little question, however, that the banks have mutual financial interest in the outcome of this lawsuit, and in any payments an individual creditor receives from Jamaica: the 1984 Agreement provides that to the extent Jamaica makes any payment to a bank pursuant to its obligations

under the 1984 Agreement in a proportion greater than the payment made to any other bank, the bank must share its payment *pro rata* with each of the other banks. 1984 Agreement § 5.03; 1985 Agreement § 5.03; 1987 Agreement § 5.03. Furthermore, Jamaica itself is obliged to make ratable payments to all banks in the event it makes any payment of "Nonconsenting Debt." 1984 Agreement § 4.03; 1985 Agreement § 4.04; 1987 Agreement § 4.04.

### I. *Plaintiff Has Standing to Bring This Action Individually*

In opposition to the instant motion for summary judgment, Jamaica strenuously argues that AICCO has no standing to bring this action without the participation of the other lenders that were parties to the 1984 Agreement. Relying both on what it claims to be an "implicit covenant" and a "textual analysis" of the 1984 Agreement, Jamaica contends that each bank covenanted not to sue Jamaica unless the banks jointly agreed to do so. An examination of the 1984 Agreement and the law of New York [1] defeats this contention.

The language of the 1984 Agreement could hardly be more clear in establishing that AICCO's right to pursue the debt owed to it by Jamaica is separate and divisible from the rights of its fellow creditors:

The amounts payable at any time hereunder to each Bank shall be a separate and independent debt and each Bank shall be entitled to protect and enforce its rights arising out of this Agreement, and it shall not be necessary for any other Bank to be joined as an additional party in any proceedings for such purpose.

1984 Agreement § 12.13.

■ That each bank has the right to sue Jamaica independently without the joinder of the other creditors, on what are in this respect divisible debts, is reiterated throughout the agreement. *See, e.g., id.*

§ 12.07(c) ("Nothing [in the agreement's section on consent to jurisdiction and waiver of immunities] shall affect the right of any Bank or the Agent to bring any action or proceeding against the Borrower...."); *id.* § 5.04(b) ("Each Bank agrees that if it shall at any time, through ... litigation ... obtain payment [it shall share such payment ratably with the other banks]"); *id.* § 12.03 ("No failure on the part of ... any Bank to exercise ... any right ... shall operate as a waiver....").

We must similarly disagree with Jamaica that only the Agent specified in the 1984 Agreement, the Bank of Nova Scotia, is empowered to institute suit at the direction of the banks. The 1984 Agreement specifies that:

The Agent shall perform the mechanical and clerical functions in connection with the administration of this Agreement which are specifically set forth herein.... The responsibilities of the agent are strictly limited to those specifically set forth in this Agreement, and no unstated functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or otherwise exist against the Agent.

1984 Agreement § 11.01(a). Section 11.-01(b)(viii) of the agreement further provides, "[t]he Agent shall not in any event be required to initiate any suit, action or proceeding arising out of or in connection with this Agreement...." *Id.*

The case of *Credit Francais International, S.A. v. Sociedad Financiera De Comercio, C.A.*, 128 Misc.2d 564, 490 N.Y. S.2d 670 (Sup.Ct.N.Y.Co.1985), cited by defendant for the proposition that only the agent in a multibank loan agreement has standing to sue the debtor, is distinguishable. In *Credit Francais*, Justice Greenfield concluded that the loan agreement in that case evinced an "overall design" of "unified action handled by a single Agent

---

1. For purposes of the 1984 Agreement, the parties "irrevocably submit[ted] to the jurisdiction of any New York State or Federal court sitting in New York City...." 1984 Agreement § 12.-07(a), and "expressly agree[d]" that the agreement would be "governed by, and construed in accordance with, the laws of the State of New York, United States." *Id.* § 12.10. Jamaica also "irrevocably waive[d] ... immunity in respect of its obligations under [the] Agreement...." *Id.* § 12.07(d).

who will proceed for all...." *Id.* at 581, 490 N.Y.S.2d at 683. Despite the similarities to the agreement in the instant case, no such overall design exists here. As in *Credit Francais*, the 1984 Agreement imposes mutual obligations on the lending banks and defines duties of the agent, for example with respect to the agreement's sharing provisions. *See* 1984 Agreement § 5.03. However, the clear language of the agreement, as cited above, also explicitly limits the powers of the agent and grants the individual banks the right to proceed individually.

It is the clear and unambiguous language that prevents us from reading into this agreement, as urged by Jamaica, an implicit covenant to act collectively or a trade practice within the international banking industry of forbearance under these circumstances. *See Wells Fargo Asia Ltd. v. Citibank, N.A.*, 612 F.Supp. 351 (S.D.N.Y.1985) (finding ambiguity in banking agreement such as to permit consideration of extrinsic evidence relating to custom and usage in Eurodollar trade). Under New York law, "evidence of industry practice may not be used to vary the terms of a contract that clearly sets forth the rights and obligations of the parties." *Croce v. Kurnit*, 737 F.2d 229, 238 (2d Cir.1984); *see also, e.g., In re W. Union Tel. Co.*, 299 N.Y. 177, 184–85, 86 N.E.2d 162, 166 (1949); *Cable-Wiedemer, Inc. v. A. Friederich & Sons Co.*, 71 Misc.2d 443, 445, 336 N.Y.S.2d 139, 141 (Monroe Co. 1972); *Kologel Co., Ltd. v. Down in the Village, Inc.*, 539 F.Supp. 727, 729 (S.D.N.Y.1982); U.C.C. § 1–205(4) (1976) (express terms control both course of dealing and usage of trade); *Restatement (Second) of Contracts* § 203(b) (1981) (same).

We find that the 1984 Agreement—a comprehensive, detailed contract executed by sophisticated parties—is integrated insofar as it provides for suits by the individual party creditors, even without a so-called "merger" or "integration" clause. *Id.* at

§§ 213, 215 (binding integrated agreement discharges prior inconsistent agreements). Jamaica has not presented any factors that persuade us to supplement the 1984 Agreement in order to contradict the unambiguous, express terms of that agreement.[2]

## II. *Summary Judgment is Appropriate in This Case*

Our finding that the 1984 Agreement is clear on its face vitiates defendant's argument that summary judgment is inappropriate where the terms of a disputed contract are not "wholly unambiguous." *See Wards Co., Inc. v. Stamford Ridgeway Assoc.*, 761 F.2d 117, 120 (2d Cir.1985); *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). We conclude instead that Jamaica has not presented a "fair and reasonable" interpretation of the contract sufficient to defeat the motion before us. *Wards Co., Inc.*, 761 F.2d at 120.

Courts in this jurisdiction have found that suits to enforce negotiable instruments are suitable cases for summary judgment. *See Hanam, B.V. v. Kittay*, 589 F.Supp. 1042 (S.D.N.Y.1984) and cases cited therein; *Interman Indus. Products, Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 154–55, 371 N.Y.S.2d 675, 679–80, 332 N.E.2d 859, 862 (1975) (in accordance with CPLR, summary judgment appropriate where action is based on instrument for payment of money only).

The Second Circuit's decision in *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir.), *cert dismissed*, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985), is on point. That case, like the one before us, arose from an international lending scheme, in which a single bank out of syndicate of lending institutions refused to reschedule debt owing to it by the Government of Costa Rica. The dissenting bank, represented by the syndicate's designated agent, sued to enforce

---

**2.** Jamaica additionally argues that the presentation of parol evidence is proper by virtue of section 12.04 of the 1984 Agreement, which provides that banking terms not otherwise defined should be construed "in accordance with the general practice among international commercial banks...." *Id.* We fail to find the existence of any ambiguous "banking terms" at issue here.

the then-existing agreement. The Court of Appeals, holding the act of state doctrine inapplicable and enforcing the contract on rehearing, directed that summary judgment be entered for the bank.

The court noted that Costa Rica's inability to pay related only to the potential enforceability of the judgment and did not determine whether judgment should enter. *Id.* at 522. The court took into account the International Monetary Fund (IMF) policy "that while parties may agree to renegotiate conditions of payment, the underlying obligations to pay nevertheless remain valid and enforceable." *Id.* at 519.

██ In this case, we find that AICCO has sustained its burden of showing "that there is no genuine issue as to any material fact and that [AICCO] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "genuine issues" that Jamaica seeks to establish through discovery—such as the intent, and custom and practice of the signatories to permit individual enforcement of the agreement—could be discerned only by creating ambiguities in the contract where none are apparent on its face. "Parol may not be used to create an ambiguity where none exists." *Hanam, B.V.,* 589 F.Supp. at 1047.[3]

Section 4.01 of the 1984 Agreement sets out a schedule for payment of Jamaica's debt to the banks, such payment to have commenced on March 15, 1986. There is no dispute that Jamaica has failed to meet its scheduled principal payments, and we find no genuine issues raised by Jamaica relative to the validity of the agreement and AICCO's right to seek its enforcement.[4] We find, therefore, that summary judgment is appropriate in this case. AICCO is entitled to its unpaid installments, interest, costs, and expenses. *See* 1984 Agreement §§ 3.05; 12.05(a)(iv).

We have been advised by defendant that our holding could have a devastating financial impact on the Government of Jamaica due to the sharing and default provisions contained in the 1984 and 1987 Agreements. But it is not the function of a federal district court in an action such as this to evaluate the consequences to the debtor of its inability to pay nor the foreign policy or other repercussions of Jamaica's default. Such considerations are properly the concern of other governmental institutions. When counsel for Jamaica first raised these concerns with the Court at a pretrial conference, we urged Jamaica to seek the intervention of such concerned governmental agencies that might wish to communicate their views to the Court. No such intervention has occurred.[5]

Summary judgment is granted. Recognizing the potential impact of this ruling, we require plaintiff to settle order on notice.

---

3. Furthermore, Jamaica claims that there is a material issue of fact as to whether AICCO acted in bad faith in bringing this action. It cannot be said that AICCO breached any covenant of good faith and fair dealing that may exist in attempting to enforce legal rights plainly belonging to it under the clear terms of the arms length contract entered into by the parties.

4. In this regard, we reject Jamaica's argument that the Transfer Agreement between Continental and AICCO, which binds AICCO to the 1984 Agreement "as amended, modified or supplemented," Transfer Agreement, at 4, also binds AICCO to the schedule of payments set forth in the 1987, not the 1984 Agreement. The consequence of Jamaica's reading of the Transfer Agreement would be that payments by Jamaica would not fall due until October 1988. However, section 12.01 of the 1984 Agreement provides that no "amendment" can be made that "postpone[s] any date fixed for any payment in respect of principal" without the consent of "all the [b]anks." AICCO has not consented to waive its right to receive payments under the 1984 Agreement in exchange for rights under the separate 1987 Agreement.

5. The sole communication that has been furnished to the Court is a copy of an IMF Official Message to the Governor of the Bank of Jamaica dated July 30, 1987, which reads in pertinent part: "[o]n the basis of the information available to us, a judgment against a debtor country in this kind of case could create problems for the implementation of the international debt strategy that is supported by member governments of the International Monetary Fund."