**J & B SCHOENFELD FUR
MERCHANTS, INC.,
Plaintiff,**

v.

**KILBOURNE & DONOHUE, INC.,
Timothy Delvescovo and Seymour
Butan, Defendants.**

88 Civ. 3584 (KC).

United States District Court,
S.D. New York.

Jan. 18, 1989.

OPINION AND ORDER

CONBOY, District Judge:

This diversity action arises out of the failure to pay a promissory note in the sum of $35,000, payable March 2, 1987. The motions currently before the Court include plaintiff's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and defendant Delvescovo's cross-motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

## BACKGROUND

On December 1, 1986, defendant Kilbourne & Donohue, Inc., by its president, Timothy Delvescovo, executed a promissory note to the order of defendant, Seymour Butan, in the sum of $35,000 payable March 2, 1987 at the Mountain Ridge State Bank, West Orange, New Jersey. *See* Plaintiff's Motion for Summary Judgment, Exhibit A.[1] According to Mr. Delvescovo's affidavit, he "delivered the note to Mr. Butan in exchange for [Mr. Butan's] promise that he would sell or discount the note with business associates in New York City, and from the proceeds, deliver $30,000, to Kilbourne & Donohue, Inc." Affidavit of Timothy Delvescovo (hereinafter "Delvescovo Aff."), sworn to August 17, 1988, at ¶ 2.

On December 2, 1986, Plaintiff J & B Schoenfeld Fur Merchants, Inc. (hereinafter "J & B"), a merchant and dealer of furs, purchased the note from Butan at a discount. J & B, by its president, Joel Schoenfeld, paid Butan $33,000 by check. *See* Plaintiff's Motion for Summary Judgment, Exhibit B; Affidavit of Joel Schoenfeld (hereinafter "Schoenfeld Aff."), sworn to August 16, 1988, at ¶ 12. Prior to pur-

Milton Shermet, Shermet, Jahabovics & Bernstein, White Plains, N.Y., for plaintiff.

James Geraghty, Donohue & Donohue, New York City, for defendants.

1. It should be noted that the parties do not question the negotiability of the instrument. The writing appears to meet all the requirements of U.C.C. § 3–104. The Court was somewhat troubled by the change, apparent on the face of the instrument, in the due date from February 28, 1987 to March 2, 1987. The Court concludes, however, that this change was not material in that the date was not advanced, *see* U.C.C. § 3–407 official comment 1, and the instrument was not presented for payment until March 2, 1987. *See* Affidavit of Joel Schoenfeld, sworn to Aug. 16, 1988, ¶ 14. The parties also do not dispute that payment on the instrument was refused by the Mountain Ridge State Bank, the defendant corporation's bank, and thus, that the presentment and dishonor requirements of the Code are also satisfied. *See* Defendants' Memorandum of Law at 1.

chasing the note, Schoenfeld states that he telephoned Kilbourne & Donohue and "spoke to a person who identified himself as Timothy Delvescovo who admitted his signature and the validity of the note." Schoenfeld Aff., ¶ 8. Plaintiff claims that after receiving these assurances, it purchased the note "for value, in good faith and without notice that the note was in any way overdue or had been dishonored or of any defense or claim to it on the part of any person." *Id.*[2] In his response to Kilbourne & Donohue's interrogatories, Schoenfeld stated that he "did not know the circumstances [under which] Butan acquired the note nor whether Butan gave anything of value nor any representations made by Butan to Kilbourne & Donohue and/or Timothy Delvescovo." Response to Defendants' Interrogatories ¶ 7(c). It should be noted that Schoenfeld was first introduced to Seymour Butan through the latter's wife, who worked in the fur industry, in early 1985. Butan himself had no connection with the fur industry but he and Joel Schoenfeld were both "interested in the semi-private pay telephone industry." *Id.* ¶ 7(a).

## LEGAL ANALYSIS

This action is before this Court based on diversity jurisdiction, 28 U.S.C. § 1332(a). Plaintiff J & B is a New York corporation with its principal place of business in New York. Defendant Kilbourne & Donohue is a New Jersey corporation. Defendant Timothy Delvescovo is a domiciliary and resident of New Jersey. Defendant Seymour Butan, who as of the date of this opinion has not filed an answer, is believed by both J & B and Kilbourne & Donohue to be a domiciliary and resident of New Jersey. Therefore, the complete diversity requirement appears to be satisfied.

### A. *Choice of Law*

■ In a diversity action, this Court, sitting in New York, must apply New York law including New York's choice-of-law

rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). New York has adopted the Uniform Commercial Code, which itself has a choice of law provision, N.Y.U.C.C. § 1–105 (McKinney's 1978). Where the parties have not specified their choice of law, as they can pursuant to § 1–105(1), the Court must determine the applicable law. N.Y.U.C.C. § 1–105(1) official comment 3. The framers of the Code, by way of Official Comment 3 of section 1–105, suggested that the "significant contacts test" be adopted. In fact, this test, rather than the traditional, more rigid tests of place of making of the contract or the place of performance/payment, is the test applied by the courts in New York. *See Petrobas Comercio Internacional, S.A. v. Intershoe Inc.*, 77 A.D.2d 546, 547, 430 N.Y.S.2d 328, 330 (1st Dep't 1980); *Martin v. Julius Dierck Equipment Co.*, 52 A.D.2d 463, 467–68, 384 N.Y.S.2d 479, 482–83, (2d Dep't 1976), *aff'd*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978).

Applying the significant contacts test to the facts of the case at bar, it is plain that there are two jurisdictions that have significant contacts to the litigation—New York and New Jersey. It is difficult to state which jurisdiction has the most significant relationship with the lawsuit. The original transaction between defendant Butan and defendant Kilbourne & Donohue occurred in New Jersey and the note was payable at a New Jersey bank in a branch in New Jersey. However, in his affidavit as quoted above, Delvescovo indicated that he, and thus Kilbourne & Donohue, were aware that defendant Butan was going to discount the note with business associates in New York. Therefore, both Delvescovo and the corporation knew that this discounting process could have ramifications in New York. Because this action primarily concerns the conduct of Butan and J & B in New York and because Delvescovo and Kilbourne & Donohue knew that the note

---

**2.** It should be noted that J & B, in the normal course of business, discounted approximately 150 notes a year during 1986 and 1987, totalling approximately $1,675,000. Response to Defendants' Interrogatories ¶ 6.

would be negotiated in New York, the Court finds it appropriate to apply New York law.[3]

### B. Defendant Delvescovo's Cross-Motion to Dismiss

■ Although plaintiff's complaint names Timothy Delvescovo and Seymour Butan as defendants, defendant Delvescovo points out that the *ad damnum clause* only requests relief from Kilbourne & Donohue, Inc. In addition, according to Delvescovo, paragraph 7 of the complaint states only that the corporation executed a promissory note to Butan; there are no allegations in the complaint that Delvescovo is personally liable for the debt. Furthermore, plaintiff requests summary judgment in the sum of $35,000 only as to Kilbourne & Donohue. In view of these facts, defendant Timothy Delvescovo, without any citation to relevant caselaw, moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985). Annexed to the complaint in the instant case was a photocopy of both the front and reverse sides of the promissory note sued upon. On the front side of the instrument, Delvescovo executed the promissory note as an agent for Kilbourne & Donohue, Inc., and as such would not be personally liable. *See* U.C.C. § 3–403(3) (1978); N.Y.U.C.C. § 3–403(3) (McKinney's 1978); N.J.S.A. 12A:3–403(3) (West 1978).[4] On the reverse side of the instrument, however, Delvescovo's signature appears without any reference to the corporation nor to the nature of his representative capacity. According to the Code, "[u]nless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement." U.C.C. § 3–402. Furthermore, this signature was not necessary in order for the note to be duly negotiated. *See* U.C.C. § 3–415(4) (regarding the contract of an accommodation party).

Dismissal for failure to state a claim is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see Patton v. Dole*, 806 F.2d 24, 30 (2d Cir.1986). Because "any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader," *see Burger v. Health Ins. Plan of Greater New York*, 684 F.Supp. 46, 49 (S.D.N.Y.1988), it can thus be inferred here that plaintiff alleged that Delvescovo is personally an accommodation indorser and could be liable as such. *Id.* § 3–415(1); *see, e.g., Central Trust Co. of Rochester v. Gottermeier Development Co., Inc.*, 65 Misc.2d 676, 677, 319 N.Y.S.2d 25, 26–27 (N.Y.Sup.Ct.1971) (court held that corporate president was personally obligated by reason of his endorsement of the note; also held parole evidence inadmissible); *see also Factors & Note Buyers, Inc. v. Green Lane, Inc.*, 102 N.J.Super. 43, 49–50, 245 A.2d 223, 228 (Law Div.1968). Since his signature was on the back of the note and a copy of the note was attached to the complaint, Delvescovo was on sufficient notice of and, in fact, interposed in his answer an affirmative defense to, this claim.[5] *See* Answer of Timothy Delvescovo, Third Affirmative Defense, filed Aug. 10, 1988. Accordingly, the Court declines

---

3. The Court notes that even if New Jersey law was selected as the appropriate law, the same result would obtain. The parties are directed to the citations to New Jersey law in the body of this opinion.

4. Because New Jersey and New York have adopted the identical provisions relevant to this action and the result is the same under the law of both states, this Court, for simplicity's sake, will, henceforth, cite only to the applicable Code section in generic form.

5. The Court further notes that a summary judgment motion under Rule 56 is the appropriate method to challenge the failure to state a claim upon which relief may be granted once an answer has been filed. Thus, Delvescovo's motion could have been denied for this reason alone.

to dismiss the action against Delvescovo for failure to state a claim.

### C. Plaintiff's Summary Judgment Motion

It appears that plaintiff moves only against defendant Kilbourne & Donohue for summary judgment for failure to pay on a promissory note. J & B claims that it is entitled to summary judgment as a "holder in due course." Schoenfeld Aff., ¶ 8. Alternatively, J & B also requests that summary judgment be granted based on plaintiff's status as a "holder." *See* Plaintiff's Memorandum of Law at 5–6. The Court acknowledges that the courts in this jurisdiction have found that actions to enforce negotiable instruments are proper cases for summary judgment. *A.I. Credit Corp. v. Government of Jamaica*, 666 F.Supp. 629, 632 (S.D.N.Y.1987); *Hanam, B.V. v. Kittay*, 589 F.Supp. 1042, 1047 (S.D.N.Y.1984).

Defendants contest plaintiff's status as a holder in due course for four reasons:

(1) the payee defendant Butan failed to give value or consideration,

(2) defendant Butan fraudulently induced defendants [sic] Kilbourne & Donohue, Inc. to give him the note never intending to give value for it, and further fraudulently represented that the note was lost and misplaced when in fact he had discounted it with the plaintiff,

(3) plaintiff knew or should have known and was charged with notice of the fact that the defendants had valid defenses against Butan on the note, and

(4) plaintiff knew or should have known that defendants had valid defenses against Butan on the note and thereby took the note without the requisite good faith.

Defendants' Local Rule 3(g) Statement. The effect of achieving holder in due course status is that the such a person takes the instrument free from certain defenses. U.C.C. § 3–305(2).

According to § 3–302, there are four requirements in order for a party to attain holder in due course status. The party must 1) be a holder, as defined in § 1–201(20), who takes the instrument 2) for value 3) in good faith and 4) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. U.C.C. § 3–302. It is clear that the plaintiff is at least a holder, one who is in possession of an instrument who took the instrument as per the legitimate rules of transfer—that is by negotiation—as the instrument was indorsed in blank by defendant Butan. *See* U.C.C. §§ 1–201(20), 3–204(2). A holder of a promissory note is entitled to summary judgment "upon a showing of execution and default." *Nutmeg Financial Servs. v. Cowden*, 524 F.Supp. 620, 621 (E.D.N.Y. 1981). The plaintiff has annexed a copy of the note in question and has shown by affidavit that payment on the note was refused. Schoenfeld Aff., ¶¶ 14–15. Defendants do not contest that plaintiff has not been paid. *See* Defendants' Memorandum of Law at 1.

The Court recognizes that the issue of whether plaintiff is a holder in due course does not arise until it is shown by defendants that a defense exists which would be good against a mere holder. *See Badische Bank v. Ronel Systems*, 36 A.D.2d 763, 764, 321 N.Y.S.2d 320, 321 (2d Dep't 1971); U.C.C. § 3–307(3) official comment 3; *see also* N.J.S.A. 12A:3–307(3), New Jersey Study Comment (West 1978) (same). "The defendant is required to assemble, lay bare, and reveal his proofs in order to show that his defenses are real and capable of being established upon a trial." *Thrift Credit Corp. v. American Overseas Trading*, 54 A.D.2d 994, 995, 387 N.Y.S.2d 930, 932 (3d Dep't 1976); *see also* U.C.C. § 3–307 official comment 2 (defendant has the burden of establishing any and all defenses by a preponderance of the evidence); N.J.S.A. 12A:3–307(3), New Jersey Study Comment (West 1978). In opposing plaintiff's motion for summary judgment, it is "essential" for the defendants, in claiming defenses of failure of consideration and fraudulent inducement, to state their version of the facts in evidentiary form. *See Thrift Credit Corp.*, 54 A.D.2d at 995, 387 N.Y.S.2d at 932; *see also Hanam, B.V. v. Kittay*, 589 F.Supp.

1042, 1047 (S.D.N.Y.1984) (defenses must not be devoid of factual content admissible in evidence nor can they be based on conjecture or speculation). "Bald conclusory assertions, even if believable, are not enough." *Ehrlich v. American Moninger Greenhouse Mfg. Corp.*, 26 N.Y.2d 255, 259, 309 N.Y.S.2d 341, 344, 257 N.E.2d 890, 892 (1970). Once a defense is known to exist, the party claiming the rights of holder in due course must prove his status as such. *See* U.C.C. § 3–307(3) and official comment 3; *First International Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.*, 59 N.Y.2d 436, 443, 465 N.Y.S.2d 888, 891, 452 N.E.2d 1216, 1220 (1983); *Badische Bank*, 36 A.D.2d at 764, 321 N.Y.S.2d at 321; *General Investment Corp. v. Angelini*, 58 N.J. 396, 403–04, 278 A.2d 193, 197 (1971).

■ As regards defendants' allegation of fraudulent inducement, there is nothing whatsoever in the very brief affidavit by defendant Delvescovo which supports this claim. The conclusory statement of reliance on Butan's promise to discount the note in New York and deliver $30,000 of the proceeds to the defendant corporation, without supporting evidence, cannot constitute a submission of proof sufficient to substantiate the allegations of fraud. *See Nutmeg Financial Servs. v. Cowden*, 524 F.Supp. 620, 622 (E.D.N.Y.1981). Accordingly, defendants here have failed to submit proof of this defense which could be asserted against a mere holder.

■ Defendants also allege the defense of failure of consideration, a defense which, if shown, is good against a mere holder. U.C.C. § 3–306(c). It is again defendants' burden to prove that this defense exists. According to Delvescovo, the consideration for the note was the executory promise by defendant Butan that he would pay Kilbourne & Donohue $30,000 after he discounted the note with business associates in New York. Delvescovo Aff., ¶ 2. Delvescovo then states that neither he personally nor Kilbourne & Donohue was giv-

en money or anything of value in exchange for the note. *Id.* at ¶ 3. These sworn statements do present the defendants' version of the facts as to the defense of failure of consideration in evidentiary form. *See Thrift Credit Corp.*, 54 A.D.2d at 995, 387 N.Y.S.2d at 932. Accordingly, the Court finds that it must consider the issue of whether plaintiff is indeed a holder in due course as defendants have raised a defense which would be good against a mere holder. *See Badische Bank*, 36 A.D.2d at 764, 321 N.Y.S.2d at 321.

Having already decided that the plaintiff is a holder, *see supra*, at 470, the next determination for the court is whether the plaintiff has shown that it took the instrument for value. U.C.C. §§ 3–302, 3–303. J & B asserts that it paid Butan $33,000 by check for the note. Schoenfeld Aff., ¶ 8, 12. J & B submitted a photocopy of both sides of the check as Exhibit B to its motion for summary judgment in support of this assertion. Defendants do not contest that plaintiff in fact paid for the note. *See* Defendants' Memorandum of Law at 1, 5. Therefore, the Court finds that J & B did pay value for the note.

■ Defendants contest whether the plaintiff took the note in good faith and without notice of any claims or defenses to it. U.C.C. § 3–302(1)(b) and (c). J & B asserts that its president, Schoenfeld, prior to purchasing the note on December 2, 1986, "telephoned the defendant Kilbourne & Donohue and spoke to a person who identified himself as Timothy Delvescovo who admitted his signature and the validity of the note." Schoenfeld Aff., ¶ 8. *See* Delvescovo Aff., ¶¶ 1–6. The existence of this conversation, which was set out in the plaintiff's Local Rule 3(g) statement, was not denied by the defendants. Accordingly, the conversation and what transpired therein are facts deemed admitted under local rule 3(g). Schoenfeld also states in his response to the defendants' interrogatories[6] that he did not know "the circumstances [under which defendant] Butan ac-

---

6. The Court notes that plaintiff's responses to defendant's interrogatories are not sworn to despite the fact that defendants' request was for answers under oath. The Court does not give these responses the same weight it would give an affidavit or deposition testimony.

quired the note nor whether Butan gave anything of value nor any representations made by Butan to Kilbourne & Donohue and/or Timothy Delvescovo." Plaintiff's Response to Interrogatories ¶ 7(c).

Defendants contend that Butan told Delvescovo, at or about the time the note was given to Butan, that Butan "was a partner in a telephone company with Mr. Joel Schoenfeld. He also indicated that he, Butan, was a personal friend of Mr. Schoenfeld. In addition, Mr. Butan had disclosed to me that he had previously been convicted of fraud and had spent time in jail." Delvescovo Aff., ¶ 6. Defendants contend that all of this information adds up to the lack of good faith on the part of J & B as well as the fact that J & B had notice of Kilbourne & Donohue's defenses against Butan. The gist of the legal argument supporting this contention, based predominately on citations to law in other jurisdictions, is that the bad reputation of the transferor should have put the plaintiff on notice that there might be defenses to or claims on the instrument, and further, that the plaintiff had a duty of inquiry. See Defendants' Memorandum of Law at 2–3 and cases cited therein.

Addressing these assertions in sequence, there is nothing, aside from the unsworn hearsay statements of Butan contained in Delvescovo's affidavit, which indicates that Butan and Schoenfeld were in fact partners. The latter only admits to sharing an interest with Butan in the semi-private pay telephone industry. Furthermore, there is nothing which indicates that plaintiff and Butan had a close personal relationship. There is only the admission by Schoenfeld that the two have known each other since 1985. See Plaintiff's Response to Interrogatories at ¶ 7(a). Moreover, plaintiff disputes ever acquiring knowledge about Butan's prior fraud conviction, id. at ¶ 7(f), and defendants offer no proof that plaintiff, in fact, had such knowledge. Contrary to the defendants' assertions that "if Mr. Schoenfeld had any knowledge of Butan's background and character it would have been grossly negligent for him to shut his eyes to the circumstances and avoid inquiry for fear of what it might reveal," Defend-

ants' Memorandum of Law at 5, the circumstances described do not show that plaintiff had a deliberate desire to evade knowledge because of a belief or fear that investigation would lead to discovery of a defense. See General Investment Corp., 58 N.J. at 403–04, 278 A.2d at 197 (1971); Irving Trust Co. v. Gomez, 550 F.Supp. 773, 775 (S.D.N.Y.1982). Thus, no duty of inquiry arose because there was no wilful ignorance. See Overseas Credit Corp. v. Cal–Tech Systems, Inc., 20 A.D.2d 355, 358–59, 247 N.Y.S.2d 252, 255–56 (1st Dep't), aff'd, 14 N.Y.2d 909, 252 N.Y.S.2d 316, 200 N.E.2d 859 (1964). It must be pointed out that merely suspicious circumstances do not, without more, amount to notice of infirmity. See id.; Factors & Note Buyers, Inc. v. Green Lane, Inc., 102 N.J.Super. 43, 49–50, 245 A.2d 223, 225 (Law Div.1968).

■ Assuming arguendo that a duty to inquire did exist, defendants state that "[i]t is difficult to believe that Mr. Schoenfeld would have simply turned over $33,000 to Butan ... without making some inquiry about the circumstances under which Butan acquired the note." First, the same might very well be said of Kilbourne & Donohue for issuing a negotiable promissory note in the amount of $35,000 to Butan in the first place, without anything more than an executory promise that it would be compensated for $30,000 at some later date. Second, the Court has already pointed out that the plaintiff did make inquiry. Finally, the Court is aware that the plaintiff was, in essence, buying the obligation of Kilbourne & Osborne on the note, since, under the Code, it is the maker of the note that has primary liability, U.C.C. § 3–413(1). Along with Kilbourne & Donohue's obligation, the plaintiff received that of Butan as indorser, one who is only secondarily liable. See U.C.C. § 3–414(1). Therefore, in view of the respective parties' obligations and because the plaintiff's sworn assertions that its president spoke to defendants and was told, by Delvescovo, that the note was "valid," Schoenfeld Aff., ¶ 8, the Court concludes that the plaintiff has established its good faith.

■ As to the last requirement for plaintiff to acquire holder in due course status, under the U.C.C., notice of defenses against an instrument "means actual, subjective knowledge of defenses.... Notice is not shown merely by the existence of suspicious circumstances." *Indyk v. Habib Bank Ltd,* 694 F.2d 54, 56 (2d Cir.1982); *Travelers Indemnity Co. v. American Express Co.,* 559 F.Supp. 452, 453 (S.D.N.Y. 1983). One commentator on the Code has noted that the notice requirement "could be viewed as a more specific 'good faith' requirement." 1 R. Alderman, A Transactional Guide to the Uniform Commercial Code 603 (1983). As such, the discussion of notice overlaps to some extent with that of good faith.

The Court appreciates the fact that the instrument sued on here was issued for an executory promise, whereby "a party binds itself to perform at some time in the future." *See First International Bank of Isreal, Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 443, 465 N.Y.S.2d 888, 891, 452 N.E.2d 1216, 1219 (1983) (citing 2 N.Y. Jur., Contracts § 7). "A holder who takes a note merely with knowledge that the note is referable to an executory contract is not charged with notice of a defense or claim which has not yet arisen in conjunction with the executory obligation." *See id.* (citing U.C.C. § 3–304(4)(b)). The Code does not require the holder "to presume that a party will breach his promise and thereby give rise to a defense to performance." *See Israel Discount Bank Ltd, v. Rosen,* 59 N.Y.2d 428, 433, 465 N.Y.S.2d 885, 887, 452 N.E.2d 1213, 1215 (1983). The Court recognizes that at the time the note was purchased by plaintiff on December 2, 1986, Butan was not yet in breach of his obligation to pay Kilbourne & Donohue as this obligation did not arise until *after* he sold the note. Furthermore, it is not asserted anywhere by the defendants that plaintiff was, in fact, told of any defenses or claims at that time. *See Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 93, 432 N.Y.S.2d 478, 481, 411 N.E.2d 1339, 1342 (1980) (testimony of the holder that it had no defense to the note was sufficient to sustain its burden on that point and to require the defendant to come forward with evidence to directly controvert the holder's testimony). Indeed, plaintiff was told, in the conversation between the corporate presidents, referred to above and which took place just one day after the note was executed, that the note was "valid." *See* Schoenfeld Aff., ¶¶ 7–8. Thus, because the defense of failure of consideration had not arisen at the time of negotiation to the plaintiff, the court concludes that plaintiff purchased the note without notice of claims or defenses. *See L. Blankstein & Son, Inc.,* 59 N.Y.2d at 443, 465 N.Y.S.2d at 891, 452 N.E.2d at 1219.

■ Kilbourne & Donohue insists that its president, Delvescovo, personally received from Butan, and witnessed Butan execute, a "release" of uncertain date (although January of 1987 is typed in) of its obligations under the note. The purported "release" stated that Butan had lost or misplaced the original note. Delvescovo Aff., ¶ 4 and Exhibit attached thereto. Butan reportedly told Delvescovo, upon giving the release, that he had never discounted the note. *Id.* Butan, had, in fact, negotiated the note to plaintiff the day after he obtained it. *See* Schoenfeld Aff., ¶¶ 8, 13. He apparently deposited the funds into an account for the benefit of "Kensington Marketing Corp." *See* Plaintiff's Motion for Summary Judgment, Exhibit B. Although it is unclear whether or not Delvescovo actually knew that plaintiff purchased the note on December 2, 1986, it is clear that he knew that plaintiff was interested in discounting it from the telephone conversation he had with plaintiff. Furthermore, because the relevant inquiry is whether *plaintiff,* at the time of purchase, had notice of any defenses or claims, the purported "release" is thus irrelevant as to whether plaintiff took the note as a holder in due course, since any defense of "release" Kilbourne & Donohue might have against Butan appears to have arisen long after the note was purchased by plaintiff. Only actual, subjective knowledge, at the time of negotiation, of an infirmity will defeat the rights of one who is otherwise a holder in due course. *See Chemical Bank of Roch-*

**474**

ester v. Haskell, 51 N.Y.2d 85, 92–93, 432 N.Y.S.2d 478, 481, 411 N.E.2d 1339, 1342 (1980); *Indyk v. Habib Bank Ltd,* 694 F.2d 54, 56 (2d Cir.1982); *United States v. Novsam Realty Corp.,* 125 F.2d 456, 457 (2d Cir.1942).

In sum, defendant's belief that plaintiff had knowledge of claims or defenses, unsupported by any factual allegations that plaintiff indeed had such notice, is not enough to create a genuine issue of fact to preclude summary judgment. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (party opposing summary judgment may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment"); *see also* Fed.R.Civ.Pro. 56(e) (non-movant must set forth "specific facts showing that there is a genuine issue for trial"). Therefore, the plaintiff has sustained its burden of showing that there is no genuine issue as to material fact and that it is, accordingly, entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

## CONCLUSION

The Court concludes that plaintiff has satisfied its burden of proving that is a holder in due course, having purchased the note for value, in good faith and without notice of any claims or defenses. As such, the defendants' raising only the defense of failure of consideration, have not suggested any "real" defenses which are good against a holder in due course. *See* U.C.C. § 3–305. Accordingly, the Court grants plaintiff's motion for summary judgment against defendant Kilbourne & Donohue. Defendant Delvescovo's cross-motion to dismiss is denied.

SO ORDERED.