**BANK LEUMI TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**David WULKAN, Defendant.**

**No. 88 Civ. 9168 (RPP).**

United States District Court, S.D. New York.

April 2, 1990.

Parker Chapin Flattau & Klimpl by Sharon Stern, New York City, for plaintiff.

Feder Kaszovitz Isaacson Weber & Skala by Gabriel Kaszovitz, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

In this action for moneys due and owing under a guaranty, plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff also moves to amend its complaint to correct an inadvertent error in the ad damnum clause.

## FACTS

On March 26, 1981, defendant David Wulkan ("Wulkan"), a resident and citizen of Israel, executed a guaranty (the "Guar-anty") whereby in consideration of certain financial considerations given to Amerintex, Ltd., he agreed to guarantee payment to plaintiff, Bank Leumi Trust Company of New York ("Bank Leumi"). The Guaranty provided that Wulkan "unconditionally guarantee[d]" any and all liabilities of Amerintex, Ltd. The Guaranty also contained a choice of law provision stating that "the rights and obligations of the Bank and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of New York." The Guaranty further provided for payment by Wulkan of attorneys fees should the Bank be required to refer a claim thereunder for collection.

On March 27, 1981, Bank Leumi and Amerintex entered into a security agreement. On February 5, 1985, those same parties entered into an Accounts Receivable Loan and Security Agreement (the "Agreement") which provided that Bank Leumi would advance to Amerintex such amounts as it would request from time to time, and that interest would be payable on the daily net loan balance at the rate of 3% per annum above the Bank Leumi's designated rate.

On September 1985, the security agreement and the Agreement were amended and restated by the parties to reflect, *inter alia*, Amerintex's name change to Dumax USA. Also on September 19, 1985, the Guaranty was amended and restated by Wulkan and Bank Leumi ("Restated Guaranty") to reflect that Wulkan would guarantee payment for the maximum aggregate principal amount of $1,000,000 for accommodations given by Bank Leumi to Dumax USA.

On October 7, 1988, a letter agreement ("Letter Agreement") was executed by Bank Leumi and Wulkan as president of an Israeli company called Dumax Ltd.[1] In the

---

1. Plaintiff asserts that the reference to "Dumax Ltd." rather than "Dumax USA" throughout the Letter Agreement was an inadvertent error and that the Letter Agreement was meant to refer to Dumax USA. Defendant argues in his Affidavit in Opposition to Motion for Summary Judgment that plaintiff intentionally made the agreement with Dumax, Ltd., an Israeli corporation, because Dumax USA could not make the payments called for in the Letter Agreement, because the payments would have to be made from Israel, and because Dumax, Ltd. was more likely to get government approval to make the payments. Defendant does not dispute, however, that the

Letter Agreement, the parties agreed that the "Dumax Obligation" to Bank Leumi (which at the time was an obligation of Dumax USA to pay Bank Leumi $701,-990.78 plus accrued interest as of September 30, 1988 of $202,925.14) would be reduced by 38.57%, provided that Bank Leumi received a cash payment of $125,000 on or before October 17, 1988 and received the remaining portion of the reduced balance in ten monthly installments of $43,100 plus accrued interest beginning on November 20, 1988. The Letter Agreement further provided that failure to make any of the payments within ten days of their due date would constitute a default and result in a loss of the entire 38.57% forgiveness, with full payment then required.

Other than an initial payment of $99,990 from Wulkan in November 1988 pursuant to the Letter Agreement, no other payments of Dumax USA's obligations were ever made. On December 20, 1988, Bank Leumi accelerated the remaining payments under the Restated Agreement and demanded payment of the outstanding balance in full, without the 38.57% forgiveness. Plaintiff then brought this action against Wulkan for payment of the full amount pursuant to the Guaranty. Plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

Summary judgment under Fed.R.Civ.P. 56 will be granted only if the movant shows that (1) there is no genuine issue as to any material fact, and (2) movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judg-

ment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57.

Summary judgment should be granted where the party opposing the motion presents no unresolved factual disputes as to the issues material to the outcome of the litigation, *King Service, Inc. v. Gulf Oil Corporation,* 834 F.2d 290 (2d Cir.1987), and is appropriate where a party is asserting unconditional rights under the terms of written instruments such as loan documents. *J & B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donahue Inc.,* 704 F.Supp. 466 (S.D.N.Y.1989); *A.I. Credit Corp. v. Government of Jamaica,* 666 F.Supp. 629 (S.D.N.Y.1987); *Hanam B.V. v. Kittay,* 589 F.Supp. 1042 (S.D.N.Y.1984) (citing cases).

Defendant makes three arguments in opposition to plaintiff's motion: (1) under an Israeli law Wulkan's guaranty is "illegal" and therefore unenforceable; (2) an issue of fact exists as to whether the Bank and he orally agreed that the effectiveness and enforceability of the Guaranty was conditional upon its approval by Israeli authorities; and (3) plaintiff is only entitled to the amount specified in the Letter Agreement purportedly settling the matter.

### 1. The Legality of the Guaranty

First, Wulkan asserts that his Guaranty would be illegal under the Israeli Currency Control Law, 1538–1978, which, according to an affidavit by Wulkan's Israeli counsel,

---

"Dumax Obligation" referred to in the Letter Agreement is the Dumax USA obligation to Bank Leumi which he had guaranteed. Furthermore, ¶ 4 of the Letter Agreement provides

It is hereby expressly understood that any and all written agreements between and among Bank Leumi, Dumax and the guarantor of the Dumax Obligation, shall remain in full force

and effect, except as expressly modified herein, and that the remaining provisions thereof are not hereby waived.

Thus, even if defendant's version of the facts is correct, whether or not Dumax USA was a party to the Letter Agreement has no bearing on Wulkan's liability under his Guaranty.

prohibits certain "transactions in foreign currency" without a permit. Plaintiff submits that this provision does not render the Guaranty invalid or unenforceable under Israeli law.

In this case, the Court need not resolve this dispute over the interpretation of Israeli law, because, even assuming the statute rendered Wulkan's guaranty unenforceable under Israeli law, the validity, enforceability and legality of the Guaranty, by its own terms, are governed by New York law. Under that law, the Guaranty is fully valid and enforceable.

■ A federal court exercising its diversity jurisdiction is required to apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New York, a choice of law provision agreed to by the parties in a commercial transaction is binding and *prima facie* valid, as long as the jurisdiction selected bears a "substantial relationship" to the agreement. *Woodling v. Garrett Corp.*, 813 F.2d 543 (2d Cir.1987); *Zerman v. Ball*, 735 F.2d 15 (2d Cir.1984). *See generally M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). As stated by the Second Circuit in *Woodling v. Garrett*, 813 F.2d at 551:

> When [a choice of law] provision exists and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated. *See A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 381, 165 N.Y.S.2d 475, 486, 144 N.E.2d 371, 379 (1957); Re-

statement (Second) of Conflict of Laws § 187 (1971).

Accordingly, the choice of law provision in Wulkan's Guaranty providing for the application of New York law is valid and must be followed by this Court if New York has a substantial relationship to the parties or the Guaranty.[2]

■ The drafting, negotiation and execution of the Guaranty and the obligations guaranteed thereby took place in New York between Bank Leumi, which is a New York bank, and Wulkan, who has substantial ties to New York. Moreover, Dumax USA, the principal debtor, of which Wulkan is president, is a New York corporation. Additionally, since payments under the Restated Agreement and the Guaranty were to be made to Bank Leumi in New York, New York was the place of performance of those agreements. *J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Limited*, 37 N.Y.2d 220, 371 N.Y.S.2d 892, 897, 333 N.E.2d 168, 172 (1975); *McCorhill Publishing, Inc. v. Greater New York Savings Bank*, 86 B.R. 783 (Bankr.S.D.N.Y.1988). Accordingly, New York has a substantial relationship to the parties and the Guaranty. Wulkan's argument that Israeli law should apply because Bank Leumi is wholly owned by an Israeli bank and employs certain Israelis is without merit; neither of those facts diminishes New York's substantial relationship to this case.[3]

■ Having determined that New York law governs the validity and enforcement of the Guaranty, the Court must determine whether to give extraterritorial effect to the Israeli currency law invoked by the defendant. Laws of foreign governments have extraterritorial effect only by comity, *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), *J. Zeevi, supra,* and "where there is confliction be-

**2.** Clearly, application of New York law will not violate "fundamental policies" of New York law.

**3.** Even if there were no choice of law provision in the Guaranty, New York law would still be applicable to this case under the "paramount interest" test, which requires the Court to apply "the law of the jurisdiction having the greatest interest in the litigation[ ]." *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372,

300 N.Y.S.2d 817, 248 N.E.2d 576 (1969). Here, since the agreement was negotiated, executed, and to be performed in New York between a New York lender for a guaranty of an obligation by a New York corporation, and since New York has a strong interest in enforcing valid agreements of this type, New York law would apply even in the absence of a choice of law provision.

tween our public policy and application of comity, our own sense of justice and equity embodied in our public policy must prevail." *Vladikavkazsky Railway Co. v. New York Trust Co.*, 263 N.Y. 369, 378, 189 N.E. 456 (1934).

In many instances, New York courts have not enforced the foreign exchange controls imposed by other nations on the ground that such controls are contrary to our country's faith in the free enterprise system. *See United Bank Ltd. v. Cosmic International, Inc.*, 542 F.2d 868 (2d Cir. 1976); *Libra Bank Limited v. Banco Nacional De Costa Rica, S.A.*, 570 F.Supp. 870 (S.D.N.Y.1983); *J. Zeevi, supra.*

■ In *Irving Trust Company v. Mamidakis*, No. 78 Civ. 0265–CLB (S.D.N.Y. Oct. 19, 1978), the plaintiff sought to enforce a Greek citizen's guaranties covering the obligations of Panamanian and Cyrian companies of which he was a principal. As a defense to the plaintiff's summary judgment motion, the defendant sought to invoke a Greek currency law which required a Greek citizen to obtain a license from the Greek government before exporting foreign currency to pay such a guaranty. The court, applying New York law as a result of a choice of law provision in the guaranties, granted summary judgment in the plaintiff's favor. The following discussion from the court's opinion is equally applicable here:

> It is not clearly shown that the mere entry of a judgment in this Court, and its enforcement against Mamidakis' assets in whatever place the judgment may be entitled to full faith and credit, would of itself subject Mamidakis to criminal penalties in Greece, but assuming that it does, it is doubtful that the New York courts would permit a borrower-guarantor from a New York bank in an international transaction having sufficient contacts with New York to justify exercise of its jurisdiction, avoid his commercial obligation so easily. To do so would

impede international financial transactions of precisely the sort present here. Slip op. at 5–6. As in *Irving Trust Company*, the Israeli currency restrictions invoked by Wulkan conflict with New York public policy by precluding enforcement of an otherwise valid Guaranty and Restated Agreement which were made in New York, provide for payment in New York to a New York lender, and which provide for the application of New York law. Thus, the Court finds no reason to give extraterritorial effect to the Israeli law so as to extinguish Wulkan's obligation to Bank Leumi, especially given Wulkan's admission that the Israeli law allows him to make the payment to Bank Leumi in Israeli currency. Wulkan Aff. ¶ 10. Accordingly, the Wulkan's Guaranty to Bank Leumi is not illegal and is fully enforceable.[4]

## 2. The Alleged Condition Precedent

Second, defendant argues that both parties to the Guaranty agreed orally that its effectiveness was conditional upon Wulkan obtaining authority from the appropriate Israeli authorities, a condition which was never met. Again, while this argument raises an issue of fact, it is not a genuine issue of material fact, because even if there were such a condition, the parol evidence rule would bar the Court from enforcing it.

■ Parol evidence is not admissible to prove a condition precedent to a written document if the condition varies or contradicts the express terms of the writing. *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F.Supp. 144, 149–50 (S.D.N.Y.1989); *VJK Productions, Inc. v. Friedman/Meyer Productions, Inc.*, 565 F.Supp. 916, 919 (S.D.N.Y. 1983); *Bank of Suffolk County v. Kite*, 49 N.Y.2d 827, 427 N.Y.S.2d 782, 404 N.E.2d 1323 (1980); *Hicks v. Bush*, 10 N.Y.2d 488, 225 N.Y.S.2d 34, 180 N.E.2d 425 (1962). New York courts have specifically held that a guarantor cannot enforce an oral

---

**4.** Defendant relies heavily on *Kashfi v. Phibro-Salomon, Inc.*, 628 F.Supp. 727 (S.D.N.Y.1986). That case, however, is quite different from the one at bar. In *Kashfi*, it was undisputed that performance under the contract at issue was rendered in the foreign country. Additionally, the court determined the contract contravened the public policy of the United States as well as of the foreign government, quite unlike the situation presented here.

agreement reached prior to the execution of a guaranty if it contradicts the provisions of a negotiated and integrated guaranty. *Braten v. Bankers Trust Company,* 60 N.Y.2d 155, 468 N.Y.S.2d 861, 456 N.E.2d 802 (1983); *Chemical Bank v. Kaufman,* 142 A.D.2d 526, 530 N.Y.S.2d 582 (1988); *Chemical Bank v. Nattin Realty,* 61 A.D.2d 921, 403 N.Y.S.2d 6 (1978). The absence of a merger clause in the writing does not necessarily open the door to parol evidence. *Braten v. Bankers Trust Company, supra.*

█ Wulkan's contention that Bank Leumi orally agreed that the effectiveness of the Guaranty was conditioned upon Wulkan obtaining the requisite authority from the Israeli government obviously varies the express written terms of the Guaranty, which states that he "irrevocably and unconditionally" undertook to guarantee Dumax's liabilities to Bank Leumi, and that "no modifications or amendment of the guaranty shall be deemed to be made unless the same shall be in writing." Accordingly, since the parol evidence rule bars submission of evidence varying the terms of an integrated writing, the alleged oral agreement is not provable as a matter of law.

*3. The Alleged Settlement of the Matter*

█ Finally, defendant argues that the settlement agreement entered into between Bank Leumi and Dumax Ltd. on October 7, 1988 prevents Bank Leumi from recovering more than the amount specified in that agreement. However, the debtor failed to make the payments required by that agreement and, by the agreement's express terms, such failure constituted a default resulting in the loss of the loan forgiveness contemplated in the agreement and requiring Dumax USA to make full payment of its obligations to Bank Leumi.

█ Defendant claims that his default should be excused because his attempts to obtain permission from Israeli authorities to make the payments have been unsuccessful. This argument is without merit, since "the risk of future inability to obtain such a license, and its refusal by a government is ordinarily not a defense in a suit for breach of contractual agreements. Corbin on Contracts § 1347 (1962)." *Irving Trust Company,* slip op. at 5. As in *Irving Trust Company,* since this action is governed by New York law, the defendant's inability to obtain a license to make the payments is not a defense to a valid agreement to make such payments.

*4. Plaintiff's Motion to Amend the Complaint*

█ Plaintiff also moves to amend its complaint to correct the ad damnum clause of the complaint, which presently seeks the outstanding principal sum of $602,000.78, plus accrued interest of $223,381.15 to December 15, 1988, and interest thereon at a rate per annum of 3% above Bank Leumi's designated rate from December 16, 1988. Plaintiff contends that it should be allowed to amend the complaint because the complaint inadvertently attributes Wulkan's $99,990 payment as reduction in principal rather than interest. Plaintiff has submitted an affidavit from Andrew Melville, a Bank Leumi Loan Recovery Specialist, in which he states that Bank Leumi routinely applies loan payments to interest first and then to principal. Thus, the $99,990 payment should have been attributed in the complaint to interest rather than principal, so that the complaint should seek $701,990.78 in principal, $122,488.51 in accrued interest, and interest thereon at the rate of 3% above Bank Leumi's designated rate.

Defendant's first two arguments, that the Guaranty is illegal and that in any event his only obligation is as set forth in the settlement agreement, have been undercut by the Court's rulings above. Defendant's third argument, that the need to amend the complaint is unsubstantiated, is also without merit. Mr. Melville's affidavit, based on personal knowledge and familiarity with plaintiff's books and records, states that it is Bank Leumi's policy to apply loan payments to interest first, and further that Bank Leumi did so in its books and records in this case but made an inadvertent error in its complaint. Accordingly, plaintiff's motion to amend the ad dam-

num clause of the complaint so that it requests judgment on the Guaranty in the amount of $701,990.78, is granted.

### 5. Attorney's Fees

Plaintiff seeks its attorneys fees under the Wulkan Guaranty, which provides that:

In the case of ... any proceeding to collect any liabilities of the undersigned, the undersigned shall pay all costs and expenses of every kind of collection, sale or delivery, including reasonable attorneys' fees....

Whenever in this instrument the words "attorneys fees" are used, such fees shall be computed as follows: 15% of the principal, interest and all other sums due and owing to the Bank, or the reasonable value of the services of the attorneys, whichever is greater.

Defendant argues that plaintiff should not be allowed to recover its attorneys fees because they are unreasonable. Plaintiff asks the Court to reserve judgment on the issue of reasonableness and, presumably, to hold herein merely that plaintiff is entitled to some attorneys fees.

When provided for by agreement, attorneys fees may be collected. *See Peoples Westchester Savings Bank v. Ganc,* 715 F.Supp. 588 (S.D.N.Y.1989); *Chemical Bank v. Nattin Realty, Inc.,* 61 A.D.2d 921, 403 N.Y.S.2d 6 (1978). Thus, summary judgment in favor of plaintiff entitles plaintiff to some attorneys fees. The Court agrees with plaintiff that, because the question of the reasonableness of the attorneys fees provided for in the Guaranty has not been fully briefed by the parties, it is appropriate to reserve decision on the amount to which plaintiff is entitled until a later date.

### CONCLUSION

For the foregoing reasons, plaintiff's motions for summary judgment and to amend the complaint are granted. Plaintiff is directed to submit a proposed judgment and an application for attorneys fees on 5 days notice to defendants within ten days of the date of entry of this opinion, and defendant shall file any objections thereto, including the reasonableness of any proposed attorneys fees, within 10 days thereafter.

SO ORDERED.