OPINION OF THE COURT
 

 Jasen, J.
 

 The critical issue presented on these appeals is whether the plaintiff bank is entitled to recover on two promissory notes as a holder in due course. We conclude that the bank was a holder in due course and in that capacity took the notes free of all personal defenses raised by the makers.
 

 Beginning in 1976, plaintiff, an Israeli bank, lent money to defendant Leo Siegman, a leading Israeli diamond merchant, on the credit of his accounts receivable. These accounts often took the form of promissory notes made payable to Siegman by other diamond merchants to whom Siegman had sold or consigned gems. Two of these notes are in issue here. The first had been issued to Siegman in the principal sum of $50,000 by defendant L. Blankstein and Son, Inc. (Blankstein). The other, with a face amount of $71,550, had been issued to Siegman by defendant Jacob Klein and Son, Inc. (Klein). Siegman, in turn, indorsed the notes in blank and delivered them, along with a large portion of his diamond inventory, to plaintiff in consideration of a loan.
 

 When plaintiff presented the notes for payment, they were returned unpaid. Upon receiving notice of said dishonor, plaintiff commenced the underlying actions by moving for summary judgment in lieu of complaint, pursuant to CPLR 3213. Supreme Court denied both motions, holding in the Blankstein case that triable issues of fact existed with respect to plaintiff’s claimed status as a holder in due course; and, in the Klein case, that disputed factual issues
 
 *441
 
 “surrounding the promissory note and the collateral mandate denial of summary judgment.”
 

 On appeal, the Appellate Division reversed, on the law, and granted the bank summary judgment, holding that the bank was a holder in due course and that as against the contention that the promissory notes were really given as collateral whereby payee would release the makers and cancel the notes upon the happening of a future event, parol evidence of such condition subsequent was inadmissible to directly contradict the terms of the notes, and that even if the notes were issued in exchange for a promise of future diamond delivery, the existence and even subsequent breach of such executory promise did not create a defense against the holder in due course. Finally, the court held that the bank, “a secured creditor, did not have to first proceed against the diamonds as collateral before seeking satisfaction of the debt in enforcing the terms of the note.” While we agree with the Appellate Division that the bank was a holder in due course, we reach this conclusion for different reasons.
 

 The applicable law is clear. The Uniform Commercial Code defines a holder in due course as a holder who takes the instrument (1) for value; (2) in good faith; and (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
 
 [1]
 
 All that is necessary for a holder of an instrument to acquire holder in due course status is to meet the requirements of this section. (See § 3-302, subd [1].)
 

 As to the first two requirements of the code, there is no question that by taking the notes as partial security for Siegman’s loan, value was given and that the bank took the notes in good faith as that term is defined in subdivision (19) of section 1-201 of the code. Defendants’ affidavits are wholly devoid of any evidentiary facts which indicate that the plaintiff knew of any alleged improprieties involved in the underlying transactions which would have
 
 *442
 
 prevented a commercially honest individual from taking the notes.
 
 (Chemical Bank of Rochester v Haskell,
 
 51 NY2d 85, 92.)
 

 The true focal point of these cases is the third requirement of the code, the “notice of claim or defense” provision. In order to determine whether or not plaintiff had notice of a defense against the subject notes within the meaning of that provision, we turn to section 3-304 of the Uniform Commercial Code. This section (subd [1], par [b]) provides, in pertinent part, that the holder of an instrument will be deemed to have notice of a defense against the instrument if he has “notice that the obligation of any party is
 
 voidable
 
 in whole or in part”. (Emphasis supplied.) Defendants contend that this provision applies to these notes because the bank knew at the time it took the notes that they were referable to nonbinding agreements between Siegman, Klein and Blankstein for the sale of diamonds wherein Siegman could refuse to deliver the diamonds or, if delivered, Klein and Blankstein could return the diamonds without further obligation and receive full credit. Thus, defendants argue that a personal defense of failure of consideration with respect to the underlying transactions can be asserted against plaintiff pursuant to subdivision (c) of section 3-306.
 
 [2]
 

 The bank, on the other hand, relies on section 3-304 (subd [4], par [b]) of the Uniform Commercial Code, which provides that a holder’s knowledge that a note was issued and delivered by the maker in return for an executory promise does not give the holder notice of a defense or claim to the note unless he has knowledge that a defense or claim has arisen from the terms thereof. It is the bank’s position that the underlying agreements between Siegman, Blankstein and Klein were executory agreements whereby Klein and Blankstein would issue promissory notes to Siegman in return for his binding, albeit execu
 
 *443
 
 tory, promise to deliver diamonds at some future date and that its knowledge of this arrangement does not defeat its holder in due course status. The bank contends, in the alternative, that if the defendants’ underlying agreements were in fact rescindable at will, thus rendering the notes mere voidable obligations, it had no notice thereof.
 

 The distinction between executory promises and voidable obligations is an important one in the law of commercial paper as set out in article 3 of the Uniform Commercial Code. An executory contract is one in which a party binds itself to perform at some time in the future. (21 NY Jur, Contracts, § 7, pp 416-417.) The usual method by which a party can avoid an executory obligation is to prove a breach by the other party. A holder who takes a note merely with knowledge that the note is referable to an executory contract is not charged with notice of a defense or claim which has not yet arisen in conjunction with the executory obligation. (Uniform Commercial Code, § 3-304, subd [4], par [b].) Of course, where a defense has arisen to the executory obligation, the obligation becomes voidable at that point and the purchaser of the instrument who has notice of said defense at the time he accepts the instrument is precluded from asserting holder in due course status. (Uniform Commercial Code, § 3-304, subd [1], par [b].)
 

 Similarly, an agreement which is rescindable at will is also a voidable obligation. (See Restatement, Contracts 2d, § 7;
 
 Matter of Rothko,
 
 43 NY2d 305, 323-324.) A holder who takes a note with notice of the maker’s absolute right to rescind is properly chargeable with the ramifications of this knowledge. As where the holder has knowledge that a defense has arisen to the performance of an underlying executory obligation, knowledge that an agreement is rescindable at will similarly provides the holder with notice that a defense to the performance of the agreement has arisen and such notice precludes the holder from asserting that he is a holder in due course. (Uniform Commercial Code, § 3-304, subd [1], par [b].) Therefore, the disposition of these appeals necessarily turns on whether the subject notes are referable to a binding executory agreement or are merely voidable obligations, and if they are voidable obli
 
 *444
 
 gations, the extent of the bank’s knowledge with respect thereto.
 

 It is appropriate at this point to briefly examine the respective burdens of proof imposed on each of the parties. Subdivision (2) of section 3-307 of the Uniform Commercial Code provides that when a holder produces a properly signed instrument, it is entitled to recover on it unless the defendant establishes a genuine defense. When such a defense is established, the burden shifts to the holder to establish its status as a holder in due course. (Uniform Commercial Code, § 3-307, subd [3].) Since the requirement that a holder show that it did not have knowledge of a defense or claim to the instrument involves proof of a negative fact, we have held that its burden of proof is a slight one. In
 
 Chemical Bank of Rochester v Haskell
 
 (51 NY2d 85, 93,
 
 supra),
 
 we held that the testimony of the holder that it had no knowledge of a defense to the note in issue was sufficient to sustain its burden on that point and to require the defendant to come forward with evidence to directly controvert the holder’s testimony. Implicit in that decision is the recognition that rarely, if ever, will the holder have documentary evidence showing its lack of knowledge. In this situation, evidence, if any, that the holder had knowledge of defenses will ordinarily be in the hands of the defendant. It is appropriate, therefore, to require the defendant in such cases to proffer such evidence to rebut the holder’s statement of no knowledge.
 

 Turning then to the cases before us, the record discloses that Amos Idelson, senior manager of the plaintiff bank, stated in his affidavits that the bank received both the Klein and Blankstein notes in good faith and without notice of any defenses or claims against them. While necessarily conclusory in form, the bank cannot reasonably be required to produce additional evidence of its lack of knowledge. (See
 
 Chemical Bank of Rochester v Haskell, supra.)
 
 Accordingly, the burden shifted to defendants to allege, in evidentiary form, facts which, if proven, would show that the bank either had notice of defenses to the notes or that it knew the notes were referable to an agreement which was rescindable at will.
 

 
 *445
 
 All three defendants submitted affidavits stating, in evidentiary form, that any of the parties to the diamond transactions at issue here could have refused to perform for any reason whatsoever without incurring liability — i.e., Siegman could have refused to deliver the diamonds and Klein and Blankstein could have returned any or all of the diamonds they received. If one of the parties chose to exercise this right, the agreement and the notes tendered by the defendants pursuant thereto were to be considered of no force and effect. While these allegations, if proven, would establish that none of the defendants were under any binding obligation to perform and, therefore, that the notes issued by Klein and Blankstein to Siegman would have to be considered voidable obligations and not instruments referable to binding executory contracts, the defendants did not allege sufficient evidentiary facts to show that plaintiff had actual knowledge that the subject notes were predicated upon voidable obligations. The most that can be said of the affidavits offered to controvert the bank’s position of having no notice of any defenses is a basic allegation that the bank was aware of a general custom prevailing in the diamond trade whereby promissory notes, unconditional on their faces, are used merely as evidence of particular transactions and are not intended to be used as negotiable paper. This hardly satisfies subdivision 7 of section 3-304 and our holding in
 
 Chemical Bank of Rochester v Haskell (supra),
 
 which imposes upon the defendants the requirement of showing, by evidentiary facts, that the bank had actual knowledge of the voidable nature of the instruments. Summary judgment on a note will be defeated only where material issues of fact are raised which are “genuine and based on proof, not shadowy and conclusory statements”
 
 (Hogan & Co. v Saturn Mgt., 78
 
 AD2d 837). Here, the defendants have alleged mere conclusory assertions of a trade custom without evidentiary facts to support their claim that the bank was aware, at the time of acceptance, that the notes in issue were mere voidable obligations. (Cf.
 
 Hall v Bank of Blasdell,
 
 306 NY 336, 341.)
 

 We also note that the unsigned undated piece of paper which purportedly contains a list of certain notes held by the bank as collateral is of no probative value. This is so
 
 *446
 
 because, contrary to defendants’ assertions, the fact that the subject Blankstein note was not on that list does not establish that the bank withdrew the note from its inventory of collateral after Siegman allegedly refused to deliver diamonds to Blankstein as promised. Nor can this paper be considered evidence that the bank thereby recognized the voidable character of that note. There is nothing on this piece of paper indicating that the list was a complete one, a fact the bank denies, or that Blankstein’s obligation thereunder had been discharged. Such worthless writings do not raise triable issues of fact with respect to a commercial bank’s handling of collateral accepted as security for significant loans.
 

 As a result of defendants’ failure to allege sufficient facts showing that defendant had actual notice that the subject notes were voidable obligations, no triable issue of fact exists with respect thereto. Thus, having satisfied the requirements of section 3-302 of the Uniform Commercial Code, plaintiff, as a holder in due course, must be deemed to have taken the subject promissory notes free from all of defendants’ personal defenses, including failure of consideration. (Uniform Commercial Code, § 3-306, subd [c]; see, also, Uniform Commercial Code, § 3-305.)
 

 Before addressing defendants’ remaining contentions, it is necessary to briefly discuss the reasoning employed by the Appellate Division in awarding summary judgment in plaintiff’s favor. The Appellate Division erroneously based its decision on the rule that parol evidence is inadmissible to vary the terms of written instruments. While this is a true statement (see
 
 Leumi Fin. Corp. v Richter,
 
 17 NY2d 166, 173), it has no application to the case before us. Subdivision (1) of section 3-302 of the Uniform Commercial Code specifically provides, in conjunction with sections 3-102 (subd [1], par [e]) and 3-104, that a holder of a note which is unconditional on its face is not a holder in due course if he has not taken the note for value, in good faith and without notice of claims or defenses to it. Consequently, the introduction of evidence for the purpose of showing that a holder has not satisfied one or more of these three requirements is contemplated by the code. This is so even though the terms of the written
 
 *447
 
 instrument are, by definition, clear on its face. The Appellate Division’s error was in failing to recognize that evidence offered to show that a holder did not take the instrument for value, in good faith or without notice of claims or defenses, is not introduced to vary the terms of the note, but, rather, to show that the bank was not a holder in due course. Parol evidence is clearly admissible for those purposes. Indeed, in
 
 Ehrlich v American Moninger Greenhouse Mfg. Corp.
 
 (26 NY2d 255, 258), we stated that parol evidence is admissible to rebut the recital of “value received” on the note.
 

 Defendants’ remaining arguments are without merit. Contrary to defendant Siegman’s assertions, the bank did not act in a commercially unreasonable manner when it proceeded against the notes rather than selling the diamonds it also held as collateral. (Uniform Commercial Code, § 9-501, subd [1].) That the diamond market may have declined during the course of this litigation does not require a different conclusion for a secured creditor has no obligation to “play the market” by selling nonperishable collateral when it appears that the market is most favorable. Furthermore, we note that defendants cannot and do not claim that plaintiff acted unreasonably as to the notes since nothing has been done with respect thereto other than commencing the instant actions.
 

 With respect to defendants’ claim, raised for the first time on appeal, that a triable factual issue exists as to the amount of Siegman’s debt to the bank, we note that defendants’ failure to raise this issue when plaintiff moved for summary judgment precluded the plaintiff from including in its affidavits documentary evidence reflecting the amount owed. Consequently, because the issue might have been obviated by such an evidentiary showing, the issue cannot be raised for the first time on appeal. (See
 
 Telaro v Telaro, 25
 
 NY2d 433, 439;
 
 Smith v Stewart,
 
 45 AD2d 853, affd 38 NY2d 747; 10 Carmody-Wait 2d, NY Prac, Appeals, § 70:417, p 688.)
 

 Finally, defendants have failed to proffer any evidentiary facts to support their claim that plaintiff relinquished the Blankstein note and thereby discharged both Siegman and Blankstein from liability under it.
 

 
 *448
 
 For all of these reasons, in each case, the order of the Appellate Division should be affirmed.
 

 Chief Judge Cooke and Judges Jones, Wachtler, Meyer and Simons concur.
 

 In each case: Order affirmed, with costs.
 

 [1]
 

 . Defendants do not dispute the fact that plaintiff is a “holder” (Uniform Commercial Code, § 1-201, subd [20]) of the two “instruments” (Uniform Commercial Code, 8 3102, subd [1], par [e]; Uniform Commercial Code, § 3-104) as those terms are defined in the code.
 

 [2]
 

 . Subdivision (c) of section 3-306 of the Uniform Commercial Code states as follows:
 

 “Unless he has the rights of a holder in due course any person takes the instrument subject to ***
 

 “(c) the defenses of want or failure of consideration, non-performance of any condition precedent, non-delivery, or delivery for a special purpose (Section 3-408)”.