■ CHEMICAL BANK, Appellant, v ALCO GEMS CORP. et al., Respondents.—Order, Supreme Court, New York County (Elliott Wilk, J.), entered on June 22, 1987, which, *inter alia,* denied plaintiff's motion for summary judgment in lieu of complaint, unanimously modified, on the law, to the extent of granting plaintiff's motion for summary judgment on the issue of defendants' liability to plaintiff, striking the affirmative defenses of fraudulent inducement and discharge, and remanding the matter for further proceedings regarding the amount owing to plaintiff, without costs, and otherwise affirmed.

In this action for breach of contract, plaintiff, Chemical Bank (Chemical), seeks to obtain a judgment against defendants, Alco Gems Corp. (Alco) and its controlling shareholder, Abraham Abraham (Abraham) (collectively defendants), in the amount of $650,000. Plaintiffs further demand interest at the variable rate of ¾% per annum above Chemical's prime rate for the period of January 13, 1985-May 13, 1985, and thereafter at a rate of 1% per annum in excess thereof to the date of entry of judgment.

In March 1982, the defendants commenced a banking relationship with Chemical. Prior to this, from 1965 until March

1982, defendants had a banking and lending relationship with Chase Manhattan Bank. When the relationship with Chemical was commenced, two critical agreements were entered into. First, Alco granted Chemical a security interest in its accounts receivable and inventory of gems to secure its indebtedness. Second, Abraham signed an unconditional personal guarantee of said indebtedness. For a period of three years, the defendants borrowed money a minimum of 18 times, for which promissory notes were issued; these were periodically paid, rolled over or consolidated.

As of December 1984, defendants owed Chemical $650,000, under several notes. On January 13, 1985, these debts were consolidated and Abraham, on behalf of Alco, executed a $650,000 promissory note payable on May 13, 1985 at an interest rate of ¾% per annum above Chemical's prime rate until the due date, and a penalty rate of 1% per annum above that rate after the due date.

On May 13, 1985, the defendants failed to make any repayment to Chemical, and the parties entered into negotiations in order to develop a repayment schedule. In December 1985, Chemical, not having been repaid, sent demand letters pursuant to both the January 13 promissory note and the guarantee of Abraham.

In January 1986, when repayment had still not been made, Chemical commenced the instant action for summary judgment in lieu of complaint on said note and guarantee. Defendants opposed summary judgment on the ground that issues of fact existed, and interposed affirmative defenses. In addition, defendants sought leave to assert counterclaims based upon the legal theories alleged in their defenses.

The IAS court ruled that four of the affirmative defenses were meritless, but that the two remaining defenses raised triable issues of fact sufficient to warrant denial of summary judgment. The first issue to be resolved was whether there was fraud in the inducement when Chemical "wooed" defendants and obtained their business. The second issue was whether the debt had been discharged by virtue of Chemical's retention of collateral consisting of gems.*

---

* Defendants alleged that prior to the action, the gems' value exceeded $700,000. The bank argued that the prior wholesale value was irrelevant and that the real question was the current value of the gems. Dayley-Hodlein Appraisal Corp. determined that there were three different schemes of valuation—distress sale conditions, which could be expected to yield $213,000; orderly liquidation conditions, which could be expected to yield

On appeal, Chemical argues that the order of the IAS court should be reversed as to both affirmative defenses and that summary judgment should be granted in its favor. We agree.

First, we hold that the defendants' affirmative defense of fraud in the inducement should have been dismissed. Where, as here "a written agreement between sophisticated, counseled businessmen is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that, owing to * * * fraud, the writing did not express his own understanding of the oral agreement reached during negotiations." *(Chimart Assocs. v Paul,* 66 NY2d 570, 571 [1986].) As defendants concede, prior to their three-year relationship with Chemical, they had a similar relationship with Chase Manhattan dating back to 1965. Moreover, given the additional fact that for three years prior to the subject note, defendants had executed 18 promissory notes, many in excess of $250,000, we find it difficult to give credence to Abraham's claim that he had difficulty understanding the relevant financial and other terms in English. Further, defendants' business expertise vitiates their argument that they were, in any way, defrauded with regard to this series of transactions. We conclude that defendants have failed to come forward with the requisite evidentiary proof sufficient to raise the defense of fraudulent inducement. *(See, Seaman-Andwall Corp. v Wright Mach. Corp.,* 29 NY2d 617, 619 [1971], *affg* 31 AD2d 136 [1st Dept 1968].)

Turning now to defendants' second affirmative defense, i.e., that Chemical's retention of the gems as collateral discharges the debt, we are similarly unpersuaded. As correctly noted by the IAS court, the terms of the subject documents expressly permitted Chemical to take possession of the subject gems in inventory upon default. Uniform Commercial Code § 9-501 (1) clearly provides that upon the debtor's default, a secured party "may reduce his claim to judgment, foreclose *or otherwise enforce the security interest by any available judicial procedure"* (emphasis added). Here, Chemical elected to sue on the debt while retaining the collateral; this has been held to be commercially reasonable by the New York Court of Appeals. *(First Intl. Bank v Blankstein & Son,* 59 NY2d 436, 447 [1983], bank as secured creditor not obligated to "play diamond market" by selling nonperishable collateral during the course of litigation.)

$347,000; and normal wholesale conditions, which could be expected to yield $520,000.

Furthermore, unless a secured creditor gives written notice that it intends to retain property as a discharge and satisfaction of the debt, no such election may be implied. *(Chrysler Credit Corp. v Mitchell,* 94 AD2d 971 [4th Dept 1983]; *Flickinger Co. v 18 Genesee Corp.,* 71 AD2d 382 [4th Dept 1979].) Notice was not given here. Thus, defendants' claim that the debt was, in any event, discharged by retention must also fail.

Accordingly, the order of the IAS court is modified to the extent of granting Chemical's motion for summary judgment as to liability, striking the fraud in the inducement and discharge affirmative defenses, and remanding the matter for further proceedings to determine the amount owing to Chemical, and the fair market value of the collateral seized, which should be deducted from the debt if Chemical elects to retain it. Concur—Murphy, P. J., Kupferman, Carro, Milonas and Smith, JJ.