Lucien FORBES,

v.

FOUR QUEENS ENTERPRISES, INC.

No. CA 96–413ML.

United States District Court,
D. Rhode Island.

July 25, 1997.

Robert W. Smith, Armstrong, Gibbons, Providence, RI, for Lucien E. Forbes.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, RI, Michael S. Devorkin, Doar Devorkin & Rieck, New York City, for Four Queens Enterprises, Inc.

## MEMORANDUM OPINION

MARY M. LISI, District Judge.

This matter is before this Court on Lucien E. Forbes's ("Forbes") appeal from a Modified Judgment dated March 1, 1996, based upon a Decision and Order entered by United States Bankruptcy Judge Votolato on January 29, 1996. The Decision and Order held that: (1) Forbes was indebted to appellee Four Queens Enterprises, Inc. ("Four Queens") in the amount of $76,402, plus, post-petition interest; and, (2) such debt was nondischargeable. For the reasons set forth below, the bankruptcy court's decision is affirmed in part and reversed in part.

## I. BACKGROUND

### A. *Facts*

Appellee Four Queens is a small travel agency in New York City doing business as "Q–Travel." Charles Mattmann[1] ("Mattmann") is the owner and president of Four Queens. Appellant Lucien E. Forbes is an entrepreneur purportedly engaged in the practice of developing foreign markets. In 1977, Forbes purported to be the chairman of a small bank, as well as a principal in several other businesses.

Beginning in December 1977, Forbes routinely utilized Four Queens for his personal and business travel needs. Ordinarily, Four Queens would make all of the necessary travel arrangements at Forbes's request, and then deliver the tickets, reservations, and/or confirmations to Forbes at designated locations or at various airport ticket counters. Four Queens would bill Forbes for the services at a later date. It was not uncommon for Four Queens to extend Forbes credit while he maintained an outstanding balance for prior services.

Forbes timely paid all of the 1978 invoices from Four Queens. In 1979, however, Forbes's outstanding balance with Four Queens increased while his payments simultaneously stopped. By June 1979, the overdue balance totaled approximately $16,000. At that point, Mattmann ceased extending credit to Forbes altogether.

In mid-June, 1979, in an effort to reinstate his credit status, Forbes sent Four Queens two checks drawn on a Panamanian bank,[2] in

---

1. This Court notes that the spelling of Mattmann's last name differs in both Forbes's documents and the Decision and Order of the bankruptcy court. This Court refers to Mattmann using the spelling found in Four Queens's documents.

2. Both checks were drawn on an account purportedly belonging to the "Swiss Bank Corporation." Forbes gave inconsistent explanations as to the ownership of this account. Initially, he testified that the checks were drawn on a "Freehold Account," that is, an account owned by a German company in which he owned an interest.

the amounts of $9,750 and $7,500. Upon receiving the checks, Mattmann authorized an additional $9,205 of credit for use by Forbes.

In September 1979, however, Four Queens learned that the two checks Forbes tendered as payment had been returned unpaid. One check was returned for insufficient funds, while the other had been written on a closed account. Thereafter, Four Queens once again ceased extending credit to Forbes and demanded payment of his $26,402 outstanding balance.[3]

Later that same month, Forbes sought additional credit. Mattmann refused. In response, Forbes offered to deposit a quantity of semi-precious blue topaz stones with Four Queens as security for the debt until such time as Forbes would be able to settle the overdue balance and accrued interest. Forbes estimated that he needed approximately two weeks to clear up the matter of his outstanding debt.

In October 1979, Forbes and Mattmann met at Lewis Kuhn's New York City office. At that time, Forbes left 21,942 carats of uncut blue topaz stones with Kuhn, a jeweler with whom Mattmann had done business previously, but who admittedly had no experience in the gem business. While the stones were weighed, no actual appraisal was done at that time.

Mattmann and Forbes then executed an agreement whereby the stones would be held as collateral against Forbes's $26,402 debt to Four Queens.[4] The agreement provided that Forbes would transfer the stones to Kuhn, and that if the debt was not repaid within thirty days, Kuhn would turn the stones over to Four Queens. The agreement, signed by both Kuhn and Forbes, did not specify what actions could be taken by Four Queens upon default.

Thereafter, Forbes contacted Mattmann only once, approximately ten days after the agreement was executed. He did not offer or seek to redeem the stones held by Kuhn, however. Ultimately, the thirty days passed and the debt remained unpaid.

Mattmann unsuccessfully tried to contact Forbes in the months and years that followed. In 1980, Mattmann attempted to have the gems appraised, but was informed by Kuhn that there was a glut on the market. Mattmann received a similar response in 1986 when he once again attempted to have the stones appraised.

Mattmann received actual physical possession of the stones from Kuhn for the first time on April 5, 1988. Since that time, Mattmann has held the stones as security for the outstanding debt, pursuant to the 1979 agreement. Mattmann never attempted to foreclose, liquidate, or sell the stones, nor has Forbes ever requested that he do so.

B. *Procedural History*

On August 2, 1989, Four Queens filed an action against Forbes in the New York Supreme Court to recover his $26,402 debt, plus interest. Forbes raised a statute of limitations defense. The court determined, however, that Forbes was not amenable to service of process from 1979 through 1984. *See Four Queens Ent., Inc. v. Forbes*, No. 16859/89 (N.Y.Sup.Ct.1991). Thus, the court found the statute of limitations to have been tolled and the cause of action brought by Four Queens to be timely.

---

Later, however, he testified that the account belonged to Argo International Services, Inc. ("Agrosa"), an organization in which he had no ownership interest but did hold a power of attorney to sign checks on behalf of the organization. In either event, Forbes's knowledge of and control over the account is not questioned.

**3.** Forbes does not dispute this figure.

**4.** The agreement provided, albeit inartfully, that

The William L. Kuhn Co., Inc. acting as agent for Q Travel 67 Broad Street, New York, N.Y., 10004 acknowledge receipt of 21,942.62 carats of Blue Topaz from Mr. Lucien E. Forbes. These stones are to held [sic] as collateral against Mr. Forbes' indebtedness to Q Travel in the amount of $26402.30 as of September 30, 1979.

It is further understood that these stones will be held by The William L. Kuhn Co. Inc. as agent for a reasonable length of time (30 days) in order to give Mr. Forbes the opportunity to liquidate his indebtedness to Q Travel. All of these [sic] stones are in the rough (uncut) state. After 30 days from this date the stones will be turned over to Q Travel.

Exhibits to Brief of Appellee Four Queens Enterprises, Inc. at 18.

On February 28, 1992, Forbes filed a petition for bankruptcy in the District of Rhode Island, seeking discharge of all his debts. In doing so, Forbes listed his debt to Four Queens in the amount of $26,402, plus interest, or approximately $76,402. He described this debt as "fixed and liquidated."

On May 27, 1992, Four Queens commenced an adversary proceeding in the same bankruptcy court, seeking $76,402, plus interest, and a finding that this debt was nondischargeable on the ground that it was procured by fraud. On March 1, 1996, the bankruptcy court entered judgment against Forbes, determining that: (1) the collateral did not satisfy the outstanding debt; and, (2) the entire outstanding debt, plus interest, was nondischargeable. The court calculated that the amount owed was $76,402, plus interest. Forbes now appeals this decision.

### C. Contentions

Forbes essentially cites two errors of law on appeal to this Court. First, Forbes argues that the bankruptcy court incorrectly applied New York's version of the Uniform Commercial Code ("N.Y.U.C.C."). Forbes contends that under New York law, Four Queens had three options with respect to the collateral it had in its possession, each of which it failed to exercise. Forbes contends that it could have: (1) sold the collateral at a judicial sale, (2) retained the collateral in strict foreclosure, or, (3) otherwise disposed of the collateral *See* N.Y.U.C.C. §§ 9–501(1), 9–505(2), 9–504 (McKinney's Uniform Commercial Code 1990). Forbes argues that because Four Queens never attempted to sell or dispose of the collateral, it waived its right to do so, along with its right to sue on the obligation. He further argues that, in retaining the collateral for such a long period of time, Four Queens realized payment for the debt. Alternatively, Forbes argues that, assuming he does owe Four Queens an outstanding balance, only the last $9,205 advanced to him should be nondischargeable under bankruptcy law.

This Court finds that the bankruptcy court properly applied the N.Y.U.C.C. with respect to the collateral agreement. The Court reaches a different conclusion with respect to the non-dischargeability of Forbes's debt to Four Queens.

## II. DISCUSSION

### A. Standard of Review

At the outset, it is incumbent upon this Court to delineate the correct standard of its review. In reviewing a decision of the bankruptcy court, this Court must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. *See* Fed. R. Bankr.P. 8013; *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994); *La Roche v. Amoskeag Bank (In re La Roche)*, 969 F.2d 1299, 1301 (1st Cir.1992). The decision of the bankruptcy court may only be rejected if this Court has a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In contrast, any conclusions of law reached by the bankruptcy court are subject to *de novo* review. *See Braunstein*, 19 F.3d at 58.

### B. Analysis

The bankruptcy court determined that this matter was governed by Article 9 of the N.Y.U.C.C. In doing so, the court found that there was: (1) a financing transaction in which credit was extended; (2) a promise to pay secured by an interest in personal property; (3) an agreement to pledge the collateral that arose by consensual agreement and, (4) no applicable exceptions. *See* N.Y.U.C.C. §§ 9–102, 9–104. These elements are clearly present here: Four Queens and Forbes entered into an agreement whereby Four Queens extended credit to Forbes in exchange for a promise that a debt would be paid, and also received a quantity of blue topaz gem stones pledged as collateral.

The bankruptcy court then analyzed the issues presented in this case in two parts. First, the court determined whether Forbes remained indebted to Four Queens or if the debt had been satisfied by the pledged collateral. Finding that Forbes remained so indebted, the bankruptcy court determined what portion of the amount in question was nondischargeable in the individual bankruptcy proceeding.

### 1. Outstanding Debt

This Court begins by examining whether Forbes remains indebted to Four Queens or whether the stones Four Queens held as collateral satisfied all obligations. Under New York law, a secured party may elect to retain collateral in satisfaction of a debt. In order to do so properly, however, the secured party must provide written notice of its intentions to the debtor. *See* N.Y.U.C.C. § 9–505(2). There is little dispute as to the fact that no such notice was given here.

Ordinarily, the failure to provide notice would preclude a finding that Four Queens retained the collateral in satisfaction of Forbes's debt. However, Forbes urges this Court to find that, given the original agreement between the parties, and given the fact that Four Queens has retained the collateral for the past ten years and has not attempted to sell it, retention of the collateral as satisfaction of the debt should be implied. Alternatively, Forbes contends that the original agreement between the parties provided the written notice required under New York law, *see* § 9–505(2), and that, as such, Four Queens has violated New York law by not taking the gem stones in satisfaction of the debt.

New York is one of a minority of jurisdictions which maintain the view that the election of a secured party to retain-collateral in satisfaction of a debt cannot be implied "[T]he statute [§ 9–505] makes the election to retain the collateral in full satisfaction and discharge of the debt *optional* with the creditor and it provides that the option is to be exercised by written notice to the debtor." *Flickinger Co. v. 18 Genesee Corp.,* 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (1979) (emphasis added). Thus, it is permissible for a secured party to retain collateral after default and yet still sue on the obligation in its totality. *See MTI Systems Corp. v. Hatziemanuel,* 151 A.D.2d 649, 542 N.Y.S.2d 710, 711 (1989). Moreover, suing on the debt while retaining the collateral "has been held to be commercially reasonable by the New York Court of Appeals." *Chemical Bank v. Alco Gems Corp.,* 151 A.D.2d 366, 543 N.Y.S.2d 426, 428 (1989); *see also First Int'l Bank of Israel,*

*Ltd. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 465 N.Y.S.2d 888, 452 N.E.2d 1216, 1221 (1983). Since a court is not permitted to imply such an election, and given the absence of written notice by Four Queens expressing any intent to do so, it is clear that Four Queens's retention of the collateral without more does not absolve Forbes of his indebtedness.

Further, N.Y.U.C.C. § 9–505(2) provides that any election to accept the collateral in satisfaction of the debt must occur after default and by a separate document. The statute provides that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection." N.Y.U.C.C. § 9–505(2).

The original agreement gave Forbes thirty days to pay the balance of his debt. After the thirtieth day, when no payment was received by Four Queens from Forbes, he was considered to have defaulted on the agreement. The original contract signed by Forbes, therefore, was not signed after default, and does not satisfy the written notice requirement of N.Y.U.C.C. § 9–505(2).

It should be noted that there is case law suggesting that if a party retains collateral for an unreasonable amount of time, an implied waiver of the right to sue on the debt may be assumed. *See H.V. Funding, Inc. v. Vakkas & Sons, Inc.,* 140 Misc.2d 587, 531 N.Y.S.2d 484, 486 (1988). Such is not the case here, however. The courts below determined that Four Queens did not act unreasonably in delaying filing suit. The New York Supreme Court found that Forbes was unavailable and not amenable to service of process during the period in which Four Queens retained the collateral. *See Four Queens Ent., Inc. v. Forbes,* No. 16859/89 (N.Y Sup. Ct 1991). This Court will not disturb this finding.

Forbes proffers three additional alternative arguments. The first relates to the care and maintenance of the collateral while

it was in the possession of Four Queens. New York law requires that the secured party act in a commercially reasonable manner and use reasonable care in the custody and preservation of pledged collateral. *See* N.Y.U.C.C. § 9–207. Forbes contends that Four Queens failed to act in such a manner because it did not sell the now worthless stones. Forbes argues that as a result, Four Queens may not now pursue a deficiency

Once again, however, Forbes misses the mark. Here, Four Queens merely retained the collateral while it searched for Forbes to serve him with process to collect the debt. Four Queens acted in accordance with the law. As such, it has not waived any right to pursue the outstanding debt it is owed by Forbes. *See Flickinger,* 423 N.Y.S.2d at 76.

Moreover, a secured party is not liable for the failure to liquidate when there has been no demand to do so. *See Reich v. Bowery Savings Bank,* 183 A.D.2d 882, 583 N.Y.S.2d 980, 982 (1992). There is no evidence or suggestion in the record that Forbes requested that Four Queens sell the stones for fear of diminishing value. As such, Four Queens cannot be penalized for not doing so.

■ Second, Forbes contends that the bankruptcy court erred by failing to deduct the value of the collateral at the time Four Queens took possession of the stones from the outstanding balance of the debt, as was done in *Warnaco, Inc. v. Farkas,* 872 F.2d 539 (2d Cir.1989). Forbes's reliance on *Warnaco* is misplaced, however. In the first instance, *Warnaco* involved an interpretation and application of Connecticut law. Moreover, the facts of the case are easily distinguishable. Here, Forbes did not expressly permit Four Queens to use the pledged collateral, as did the creditor in Warnaco, nor was there a desire by Four Queens to do so. Further, Four Queens did not contemplate that the value of the gems would satisfy all or even part of the debt that they secured.

■ Finally, Forbes invites the Court to find error in the fact that the bankruptcy court ignored undisputed expert testimony which allegedly established that the minimum value of the collateral was equal to or greater than the outstanding indebtedness to

Four Queens at the time of the pledge. This Court declines the invitation. As discussed, the law is clear that Four Queens was justified in retaining the collateral and later suing on the total balance of the debt. The value of the stones is immaterial since Forbes never requested that the stones be sold or disposed of.

The bankruptcy court correctly determined that Forbes maintained an outstanding debt to Four Queens which was not satisfied by the pledge of collateral. It further found that the stones were never legally accepted as satisfaction for the debt by Four Queens, and that Forbes never requested that the stones be sold to prevent a significant loss in value. This Court sees no reason to disturb the bankruptcy court's findings that Forbes remains indebted to Four Queens.

## 2. Dischargeability

■ This Court next turns to address the issue of whether any or all of this debt is nondischargeable. Title 11, section 523(a)(2)(A) of the United States Code provides that a debtor shall not be discharged on a debt for money, property or services, or for an extension, renewal or refinance of credit, to the extent that it was obtained by false pretenses, a false representation, or actual fraud. *See* 11 U.S.C. § 523(a)(2)(A). In order to have a debt deemed nondischargeable, a creditor is required to prove, by a preponderance of the evidence, that: (1) the debtor obtained property by means of a knowingly false representation or one made in reckless disregard of its truthfulness; (2) the debtor intended to deceive the creditor; (3) the creditor actually relied on the misrepresentations; and, (4) the creditor's reliance was justifiable under the circumstances. *See Field v. Mans,* — U.S. —, —, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Kuzniar v. Keach,* 204 B.R. 851, 853–54 (Bkrtcy.D.R.I.1996). The innate purpose of the statute is "to prevent a debtor from retaining the benefits of property obtained by fraudulent means...." COLLIER ON BANKRUPTCY § 523.08[1][a] at 523–40 (Lawrence P. King, ed., 15th ed. 997).

There is no dispute in this case as to the fact that Forbes incurred a debt to Four Queens totaling $26,402. Because of the unique factual interplay present here, the debt cannot be viewed as a whole in determining dischargeability, however. Instead, this Court must analyze the dischargeability issues in terms of when the debt was incurred-that is, whether it was before or after Forbes purported to settle his account by tendering the two checks.

### a. Post–Tender Debt Incurred

■ First, this Court turns to address the dischargeability of that portion of the debt incurred *after* Forbes tendered the two checks to Four Queens, that is, $9,205. This task need not detain the Court for long. It is well-settled that one who issues "bad checks" with the actual knowledge that the account from which they are drawn contains insufficient funds may be guilty of a false representation, thereby qualifying the resulting debt as nondischargeable in a bankruptcy proceeding. *See Meramec Valley Bank v. Newell (In re Newell)*, 164 B.R. 992, 995 (Bankr.E.D.Mo.1994); *Charlie Kelton's Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc. v. Roberts (In re Roberts)*, 82 B.R. 179, 181–82 (Bankr.D.Mass.1987); *Frits Loonsten, Inc. v. Mullin (In re Mullin)*, 51 B.R. 377, 378 (Bankr.Ind.1985).

■ This Court concurs with the bankruptcy court's findings that the first two elements for dischargeability are present here. First, it is quite clear that Four Queens extended the $9,205 in credit in response to the receipt of the two bogus checks. Indeed, Four Queens had theretofore denied Forbes its services pending satisfaction of his outstanding debt. Second, the fact that Forbes himself admitted to having control and authority over the accounts from which the two checks were drawn supports the finding that he tendered them with the intent to deceive Four Queens. In this vein, this Court is mindful of the principle that deference to the bankruptcy court's factual findings concerning fraudulent intent is particularly appropriate. *See Tully*, 818 F.2d at 108.

■ It is equally clear that Four Queens acted justifiably in relying on Forbes's misrepresentations. Given that Four Queens provided Forbes the $9,205 in credit only after it received the checks in the amount of the outstanding debt, this Court finds nothing erroneous with the bankruptcy court's conclusion. Forbes's post-tender debt, totaling $9,205, qualifies as nondischargeable under the statute.

### b. Pre–Tender Debt Incurred

■ The question as to the dischargeability of the debt incurred *prior* to the time Forbes tendered the two checks is not so easily answered. This is so because a debt is only dischargeable to the extent that it was *"obtained by ... false pretenses or representations or by means of actual fraud."* COLLIER ON BANKRUPTCY at 523–40 (emphasis added); *see also Printy v. Dean Witter Reynolds Inc.*, 110 F.3d 853, 857 (1st Cir. 1997). Thus, the potential for discharge of a debt involving a bad check is limited to those situations in which the checks were tendered at the time the debt was incurred. *See* DANIEL R. COWANS, BANKRUPTCY LAW AND PRACTICE, § 6.21 at 2 (6th ed.1994).

The present facts fail to support the conclusion that the pre-existing debt of $16,000 was procured, in any way, by fraud. On the contrary, the facts show that Four Queens and Forbes had a trusting relationship, such that Four Queens provided Forbes with travel services on credit and billed him at a later date. They further show that although Forbes seemed to have a history of delinquent payments, he eventually did settle his accounts. Thus, there is nothing to suggest that the $16,000 worth of services Four Queens provided to Forbes on credit was obtained by any type of fraud, false pretense, or false representation. Accordingly, the pre-existing balance of $16,000 fails to qualify as an exception to dischargeability, as it does not meet the criteria required by statute.

In reaching this conclusion, this Court takes note of the bankruptcy court's reliance on *Shawmut v. Goodrich (In re Goodrich)*, 999 F.2d 22 (1st Cir.1993), in reaching its determination that the entire debt in question was nondischargeable. This Court finds

*Goodrich* to be distinguishable from this case in one important aspect. In *Goodrich,* the court found a debt that arose from the renewal of a line of credit not to be dischargeable. Here, no such renewal of credit took place. Rather, Four Queens merely provided Forbes an *additional* line of credit when it thought that the first had been settled. Thus, this Court declines to adopt the bankruptcy court's finding that the entire debt is nondischargeable.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that the portion of the debt incurred after Forbes transferred the two fraudulent checks to Four Queens, that is, $9,205, plus interest, is nondischargeable. The debt incurred prior to tender of the checks, that is, $16,000, plus interest, is dischargeable. Accordingly, the decision of the bankruptcy court is *affirmed* in part, *reversed* in part, and *remanded* to the bankruptcy court for a determination of the interest accrued on the nondischargeable $9,205 debt.

SO ORDERED.