Argued and submitted January 19, affirmed April 20, petition for review denied
September 15, 2016 (360 Or 401)

VFS FINANCING, INC.,
a Delaware corporation,
*Plaintiff-Respondent,*

*v.*

SHILO MANAGEMENT CORPORATION,
an Oregon corporation;
and Mark S. Hemstreet,
an Oregon resident,
*Defendants-Appellants.*

Washington County Circuit Court
C137477CV; A158165

372 P3d 582

Charles R. Markley argued the cause for appellants. With him on the briefs were Ridgway K. Foley, Jr., and Greene & Markley, P.C.

Joseph VanLeuven argued the cause for respondent. With him on the brief were Kevin H. Kono and Davis Wright Tremaine LLP.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

SHORR, J.

**SHORR, J.**

Defendant Shilo Management Corporation (Shilo) is a borrower, and defendant Mark Hemstreet is a guarantor, of a large commercial loan that was used to purchase a corporate airplane. The airplane also served as collateral to secure the loan. After Shilo defaulted on the loan, plaintiff VFS Financing, Inc., the creditor, filed this action to (1) recover amounts due on the promissory note against Shilo, (2) obtain a money judgment against Hemstreet for the amount of the guaranty, and (3) repossess the property securing the loan, the airplane. Plaintiff obtained possession of the airplane early in the litigation, but did not immediately sell it. After obtaining possession, plaintiff continued to pursue money damages on the breach of the promissory note and guaranty claims. Plaintiff filed a motion for summary judgment on those claims. Defendants opposed the motion and argued that they had retained an expert who would testify that plaintiff's failure to sell the airplane in a timely and commercially reasonable manner, which could have reduced or eliminated the debt, created a material issue of fact that prevented summary judgment on plaintiff's note and guaranty claims. The trial court disagreed, held that there were no material issues of fact, and granted summary judgment to plaintiff.

Defendants appeal and assign error to the trial court's grant of summary judgment to plaintiff. For the reasons discussed below, we reject defendants' arguments and affirm the trial court's ruling.

We begin with the standard of review. We may affirm a grant of summary judgment if, when viewing the summary judgment record and taking all reasonable inferences in favor of the party opposing summary judgment, we conclude that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); ORCP 47 C. No genuine issue of material fact exists if, when viewing the record in the manner most favorable to the adverse party, "no objectively reasonable juror could return a verdict for the adverse party." ORCP 47 C. A fact is only material if it is "one that, under applicable law,

might affect the outcome of a case." *Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001).

Applying that standard here, we state the relevant facts in the light most favorable to defendants, the adverse parties. In the latter part of 2007, Shilo borrowed $4,000,000 from plaintiff, which was memorialized in a promissory note. At that and all times relevant to this decision, plaintiff was a subsidiary of GE Capital Corporation. As noted, the purpose of the loan was to purchase a Cessna jet airplane, which was to be used as a corporate airplane for Shilo's business affairs, and the airplane served as collateral for the loan.

Defendant Shilo had some issues repaying the note in 2010 and had its first default on the loan. As part of a negotiation of those issues, Hemstreet, a Shilo principal, provided plaintiff with a partial personal guaranty of up to $1,500,000 of Shilo's debt to plaintiff. After that point, Shilo continued to have issues making payments and was in default again in 2011, 2012, and 2013. As a result of the continued defaults, plaintiff filed this lawsuit in October 2013.

Plaintiff brought a claim against Shilo for breach of the promissory note. It brought a claim against Hemstreet for breach of the guaranty. In addition, plaintiff brought a claim for "claim and delivery," seeking possession of the airplane that served as collateral for Shilo's debt. Early in the litigation, plaintiff obtained possession of the airplane, but did not sell the airplane prior to entry of the judgment in the trial court. As noted, plaintiff moved for summary judgment on the note and guaranty claims. In opposing summary judgment, defendants argued, as they do before us, that plaintiff's failure to sell the airplane in a "commercially reasonable manner" and in "good faith" prevented plaintiff from obtaining summary judgment on its note and guaranty claims. Defendants argued that they had retained an expert who would testify that plaintiff had not acted commercially reasonably or, as a result, in good faith because plaintiff did not attempt to sell the airplane while it pursued its note and guaranty claims. Defendants contended that created an issue of fact that prevented summary judgment for plaintiff.

The trial court granted plaintiff summary judgment. It concluded that any expert testimony that plaintiff did not act commercially reasonably or in good faith in disposing of the collateral did not create a fact issue for the jury on plaintiff's claims on the note and guaranty. Accordingly, the trial court granted plaintiff's motion for summary judgment because there were no disputed issues of fact and plaintiff was entitled to judgment as a matter of law on its remaining claims. Defendants assign error to that ruling and renew their argument that their expert created a fact issue as to whether plaintiff acted commercially reasonably and in good faith in the sale of the collateral, which they contend should have prevented plaintiff from obtaining summary judgment on its note and guaranty claims.

Turning to the substantive law that applies, the parties appear to agree, and we also conclude, that the New York enactment of the Uniform Commercial Code (UCC) applies.[1] Article 9 of the UCC addresses, among other things, the rights and duties of a secured party with respect to a debtor that has defaulted on a loan and provided property as security. Article 9, section 601, provides that, following a default on a loan,

"[a] secured party:

"(1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure[.]"

UCC § 9-601(a)(1). The UCC further provides that those rights are "cumulative and may be exercised simultaneously." UCC § 9-601(c). Thus, under the plain text of the statute, a secured party may, among other things, pursue a claim on the debt or seek to foreclose on the underlying security interest. Further, the text provides that those rights are cumulative such that the creditor may seek to enforce one

---

[1] The promissory note, guaranty, and security agreement all provide that they are to be construed according to and governed by New York law. Although Oregon summary judgment procedural law applies, New York's substantive law applies to the breach of promissory note and guaranty claims. Defendants cite mostly Oregon substantive law in their opening brief, but in their reply argue that New York and Oregon UCC enactments are substantially similar. All citations to the UCC in this opinion are to the New York enactment of the UCC. *See* NY UCC Law (McKinney 2016).

remedy and ignore another or seek to enforce more than one remedy at the same time.[2]

In their answer, defendants raised a general affirmative defense that plaintiff had violated the duty of good faith and fair dealing. At summary judgment, they argued more specifically that plaintiff had acted in a commercially unreasonable manner and in bad faith when plaintiff pursued its claim on the note without also seeking to sell the secured airplane. As discussed below, we agree that the UCC imposes on parties to a commercial contract an "obligation of good faith in its performance and enforcement" and requires "the observance of reasonable commercial standards of fair dealing." UCC § 1-304; UCC § 9-102(43). As a general matter, New York UCC law provides that a party may raise as a defense to a breach of contract claim that the claim is unenforceable because the party seeking to enforce the contract acted in bad faith or in violation of reasonable commercial standards of fair dealing. *See, e.g., Super Glue Corp. v. Avis Rent A Car Sys., Inc.,* 132 AD2d 604, 605-06, 517 NYS2d 764, 766 (1987) (concluding that acting in bad faith is generally a "disqualifying factor as distinguished from a liability-imposing factor"). The specific issue here, however, is whether a plaintiff acts in bad faith or in a commercially unreasonably manner when it pursues a valid note or guaranty claim, but does not also move quickly to sell the collateral that secures the note or guaranty.

Defendants essentially argue that it is commercially unreasonable and bad faith for a plaintiff *not* to move forward with a sale of the collateral while the plaintiff pursues its claims for damages on the note and guaranty. That argument is undercut by the statutory text that gives the secured party the right to pursue any "or" all of its remedies "cumulative[ly]." UCC § 9-601(a)(1); UCC § 9-601(c). Significantly, New York's appellate courts have directly

---

[2] The parties' security agreement in this case provided plaintiff, following debtor's default, with "all of the rights and remedies of a secured party under the Uniform Commercial Code * * * and under any other applicable law." It further provides that plaintiff's remedies "shall not be exclusive or alternative but shall be cumulative and in addition to all other remedies in favor of [plaintiff] existing at law."

rejected defendants' argument. In *First International Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.*, the New York Court of Appeals held that a "bank did not act in a commercially unreasonable manner when it proceeded against the notes rather than selling the diamonds it also held as collateral." 59 NY2d 436, 447, 452 NE2d 1216, 1221 (1983); *see also Marine Midland Bank v. Hakim*, 247 AD2d 345, 345, 669 NYS2d 212, 213 (1998) (holding that "[p]laintiff's decision to sue on the note while retaining the collateral was within its rights" under UCC Article 9 and plaintiff was not required to "play the market" by selling nonperishable collateral during the litigation on the unpaid debt); *Chem. Bank v. Alco Gems Corp.*, 151 AD2d 366, 368, 543 NYS2d 426, 428 (1989) (noting that a bank could elect to sue on the debt while retaining the secured gems in its possession and such conduct was commercially reasonable). New York law controls and provides that, as a matter of law, it is *not* commercially unreasonable for a secured party to litigate damage claims on a debt while continuing to hold the secured property.[3]

---

[3] We recognize that secured parties do owe substantive duties in holding and selling the collateral that secures the underlying debt. *See, e.g.*, UCC § 9-610(b) (stating that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable"). If those duties are breached, debtors may have recourse to address such a breach. For instance, a debtor may seek an order from the court directing the secured party to take some action with respect to the collateral. *See* UCC § 9-625(a) (stating that, "[i]f it is established that a secured party is not proceeding in accordance with this article, a court may order * * * disposition of collateral on appropriate terms and conditions"). In addition, if the secured party sells the collateral in a commercially unreasonable manner, the debtor can also file a separate lawsuit at that point. *See Christie's Inc. v. Davis*, 247 F Supp 2d 414, 422 (SDNY 2002) (concluding that any questions about the reasonableness of the eventual sale of the collateral were premature in the note litigation, but could be raised after the property is sold in "a separate lawsuit to challenge the commercial reasonableness of that sale"). Further, if the secured party sells the collateral and sues for the amount of a deficiency—the difference between the amount realized on the sale of the collateral and the amount still owed on the debt—the debtor may argue in the deficiency action that the sale was not commercially reasonable. *See Ford Motor Credit Co., Inc. v. Racwell Constr. Inc.*, 24 AD3d 500, 501, 808 NYS2d 294, 295 (2005) (holding under UCC § 9-626(a)(2) that the secured party must prove that the sale of the collateral was done in a commercially reasonable manner). In this case, we merely conclude that New York law provides that the failure of the creditor to immediately sell the collateral, while pursuing its claim for damages on the debt, does not give rise to a defense of commercial unreasonableness by the debtor on the creditor's claim for damages on the underlying debt.

Despite that established case law, defendants contend that the trial court erred because defendants had filed a declaration pursuant to ORCP 47 E stating that they had retained an unnamed expert who would testify to admissible facts and opinions that would create factual disputes that prevent summary judgment.[4] In opposing summary judgment, defendants argued that their expert would testify that plaintiff was acting in a commercially unreasonable manner and that this testimony would "inform the finder of fact on the contested issue of Plaintiff's bad faith" in delaying the sale of the secured airplane. They further contend that the issue of whether a party is acting reasonably or in good faith is an issue of fact under the UCC.

The Oregon Rules of Civil Procedure permit litigants to protect from pretrial disclosure the identity of their expert witnesses and the substance of their testimony. *Stevens v. Czerniak*, 336 Or 392, 404-05, 84 P3d 140 (2004). "To effectuate that policy choice, ORCP 47 E 'is designed to enable parties to avoid summary judgment on any genuine issue of material fact which may or must be proved by expert evidence.'" *Hinchman v. UC Market, LLC*, 270 Or App 561, 569, 348 P3d 328 (2015) (quoting *Moore v. Kaiser Permanente*, 91 Or App 262, 265, 754 P2d 615 (1988), *rev den*, 306 Or 661 (1998)). Thus, a party may submit an affidavit or declaration by an attorney that does not disclose the identity of the expert or the substance of the testimony, but simply states that "an expert has been retained and is available and willing to testify to admissible facts or opinions that would create a question of fact." *Moore*, 91 Or App at 265;

---

[4] ORCP 47 E provides, in relevant part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion."

Plaintiff does not contend that defendants' declaration citing an undisclosed expert failed to comply with ORCP 47 E. Rather, plaintiff argues that defendants' declaration, even fully crediting defendants' position that their expert would testify that plaintiff had acted in a commercially unreasonable manner and in bad faith, did not create a material issue of fact as to the commercial reasonableness of plaintiff's actions under New York law.

*see also* ORCP 47 E (stating same). The submission of an ORCP 47 E affidavit or declaration does not automatically create an issue of fact, but will preclude summary judgment when the expert testimony is "required" to establish a genuine issue of material fact. *Hinchman*, 270 Or App at 569. We recently held that, among other instances, expert testimony is "required" to create a genuine issue of material fact when "the point or points put at issue by the * * * summary judgment motion are ones that are susceptible to proof through expert testimony, given the plaintiff's particular theory of her claim." *Id.* at 570.

Here, defendants assert that their expert would testify that plaintiff had acted in a commercially unreasonably manner when it pursued its note and guaranty claims while holding onto and not selling the secured airplane. However, as discussed above, New York UCC law expressly holds that it is *not* commercially unreasonable for a creditor to seek damages on the note or guaranty while continuing to hold the collateral. *See, e.g., First International Bank of Israel, Ltd.*, 59 NY2d at 447, 452 NE2d at 1221. Under those circumstances, the trial court did not err in concluding as a matter of law that expert testimony would not have created a fact issue on the commercial reasonableness of plaintiff's conduct. The expert's proposed testimony was not "required" in this case—or even permissible here—because the expert could not testify to create a fact issue regarding plaintiff's failure to meet a standard of commercial unreasonableness when New York courts have already determined the same conduct is commercially reasonable as a matter of law. Thus, defendants could not create a triable issue of fact by arguing that their expert would testify that it *was*, in fact, commercially unreasonable for plaintiff not to sell the collateral while pursuing the damages claims, because New York law provides otherwise as a matter of law.

Defendants also contended in the trial court that their expert would testify as to plaintiff's "bad faith" in not "disposing of the Cessna" while plaintiff "pursued its remedies against Defendants." Defendants specifically argued below that "[i]information gleaned from this expert testimony on commercial reasonableness will also inform the

finder of fact on the contested issue of Plaintiff's bad faith." For similar and additional reasons discussed below, we conclude that the ORCP 47 E declaration and the related proposed expert testimony could not create fact issues on plaintiff's good or bad faith in retaining the collateral and pursuing its damages claims.

As noted above, the UCC imposes a general duty of good faith on the conduct of all subject parties, providing that "[e]very contract or duty within this act imposes an obligation of good faith in its performance and enforcement." UCC § 1-304. Under Article 9 of the UCC, good faith means "honesty in fact and the observance of reasonable commercial standards of fair dealing." UCC § 9-102(43). The statute provides for a subjective standard, "honesty in fact," and an objective one, "reasonable commercial standards of fair dealing." Addressing the objective standard first—"reasonable commercial standards of fair dealing"—we have already noted that New York law provides that it is "not commercially unreasonable" for a creditor to sue for damages on a note while retaining the collateral. *First International Bank of Israel, Ltd.*, 59 NY2d at 447, 452 NE2d at 1221.

Addressing the subjective component, defendants' proposed expert testimony also did not create a fact issue regarding plaintiff's subjective good faith or its "honesty in fact" under UCC § 9-102(43). As noted, defendants specifically argued below that "this expert testimony on commercial reasonableness will also inform the finder of fact on the contested issue of Plaintiff's bad faith." Because New York law provides that the conduct at issue here was commercially reasonable as a matter of law, any proposed expert testimony otherwise was immaterial and would not inform the factfinder regarding plaintiff's subjective good or bad faith. Defendants similarly contend that the expert testimony may place plaintiff's good faith in question because a jury could find that plaintiff delayed the sale of the Cessna "to obtain a judgment in the full amount" of the debt. However, a juror could not reasonably infer that such conduct was in bad faith based on the expert testimony proposed or even "imagined" here as, again, New York law expressly permits

such conduct.[5] *See Hinchman*, 270 Or App at 570 (stating that determining whether an ORCP 47 E affidavit, which may be stated in broad terms and "keep secret even the precise *issue* on which an expert will testify," creates an issue of fact defeating summary judgment may require "an act of imagination by the summary judgment court" (emphasis in original)).

In sum, even when viewing the facts in the light most favorable to defendants, defendants' proposed expert testimony was immaterial and could not have created a factual issue preventing summary judgment. Defendants' proposed expert testimony could not "under applicable law * * * affect the outcome of [the] case." *Zygar*, 169 Or App at 646. Defendants' expert could not have testified at trial that plaintiff's conduct breached reasonable commercial standards of conduct under the UCC because New York case law holds, as a matter of law, that such conduct is permissible.

For the reasons discussed above, we affirm the trial court's decision to grant summary judgment to plaintiff. We reject defendants' remaining contentions without discussion.

Affirmed.

---

[5] We do not hold that a party is necessarily acting commercially reasonably and in good faith whenever its conduct is legal. However, in these circumstances, where the New York UCC and prior case law expressly approves the same conduct that defendants argue here and the proposed expert testimony mainly sought to contravene that legal standard, the trial court was correct in concluding that this was not an issue for which contrary expert testimony would create a factual issue regarding the reasonableness or good faith of plaintiff's conduct.